UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Aqua Metals Securities Litigation | Case No. 17-cv-07142-HSG<br><br>**ORDER DENYING SINGER'S AND JORDAN'S MOTIONS AND GRANTING THE PLYMOUTH GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Re: Dkt. Nos. 13, 21, 23 |

On December 15, 2017, Plaintiff Arlis Hampton filed this securities class action lawsuit individually and on behalf of others who acquired common stock of Aqua Metals, Inc. ("Aqua Metals") during the period between May 19, 2016 and November 9, 2017 ("Class Period") and consequently suffered damages. [1] Dkt. No. 1 ("Compl.") ¶ 1. Also on December 15, 2017, notice of this suit was published in *Business Wire*. *See* Dkt. No. 24 ("Lavallee Decl.") Ex. 1. The complaint asserts claims under §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. § 240.10b-5). Compl. ¶ 16. The complaint names the following defendants: Aqua Metals, Inc. ("Aqua Metals"); Aqua Metals' Chief Executive Officer, Stephen R. Clarke; Aqua Metals' Chief Financial Officer until August 10, 2017, Thomas Murphy; and Aqua Metals' Chief Financial Officer from August 10, 2017 until the end of the class period, Mark Weinswig. Compl. ¶¶ 21–24.

Three competing motions for appointment as lead plaintiff and approval of lead counsel

---

[1] The class period presented in the first-filed action is February 9, 2017 through November 9, 2017. Compl. ¶ 1. The period presented in the subsequent consolidated actions is May 19, 2016 through November 9, 2017. Case No. 4:17-cv-07270-HSG, Dkt. No. 1; Case No. 4:17-cv-07196-HSG, Dkt. No. 1. "For purposes of appointing a lead plaintiff, the longest class period governs." *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014).

are pending: (1) a motion filed by Andrew Singer, seeking appointment of himself as lead plaintiff and approval of Faruqi & Faruqi, LLP as lead counsel, Dkt. No. 13; (2) a motion filed by Paul Jordan, seeking appointment of himself as lead plaintiff and approval of Glancy Prongay & Murray LLP as lead counsel, Dkt. No. 21; and (3) a motion filed by the Plymouth County Retirement Association and Denis and Theresa Taillefer's private company 1103371 Ontario Ltd., (collectively, the "Plymouth Group"), seeking appointment of the Plymouth Group as lead plaintiff and approval of Berman Tabacco and Levi & Korsinsky as co-lead counsel ("Plymouth Mot.").[2] Having carefully considered the relevant filings and authorities, the Court hereby **DENIES** the Singer and Jordan motions and **GRANTS** the Plymouth Group's motion.

## I.  BACKGROUND

Aqua Metals is a company purportedly formed to recycle lead through a process called "AquaRefining." Compl. ¶ 2. Defendants allegedly made materially false or misleading statements and failed to disclose problems Aqua Metals was having in ramping up their lead recycling processes. *Id.* ¶ 14. As a result of Defendants' alleged omissions, when Aqua Metals stock price declined, Plaintiffs (who acquired Aqua Metals securities at artificially inflated prices during the Class Period) suffered financial losses. *See id.* ¶¶ 1, 15, 54.

Specifically, Plaintiffs allege that Defendants concealed:

> (1) that Aqua Metals' breaking and separating process was facing substantial obstacles due to AquaRefining's need for a much higher degree of separation than is normal in the industry; (2) that the Company's breaking and separating process was not operating reliably or efficiently; (3) that the breaking and separating obstacles and issues were negatively impacting the Company's output; (4) that the Company's four "operating modules" were being used primarily for experimentation, rather than production; (5) that module operators were assisting with lead removal; (6) that, as a result of the foregoing, the ramp up of the Company's recycling process was being significantly hindered and delayed; and (7) that, as a result of the foregoing, Defendants' statements about Aqua Metals' business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

*Id.* ¶ 14.

<hr>

[2] Plaintiff Singer elected not to file an opposition to the motions of either Plaintiff Jordan or the Plymouth Group. It is undisputed that both other applicants suffered greater losses than Plaintiff Singer. *See* Dkt. No. 13 at 2 (claiming a loss of $137,320.17 for Plaintiff Singer). As a result, the Court deems his motion to have been abandoned and does not consider Plaintiff Singer in its analysis.

On November 9, 2017, after a series of allegedly incomplete disclosures in May, August, and October of 2017, Aqua Metals made an announcement revealing its struggles to become fully operational. *Id.* ¶¶ 32–33, 45. Aqua Metals stock declined by approximately 26%, 24%, 28%, and 2% following the May, August, October, and November announcements, respectively. Compl. ¶¶ 32–33, 37–38, 42. By November 14, 2017, Aqua Metals's stock closed at $3.00 per share, down from $16.65 per share in early May. Compl. ¶¶ 5, 13.

## II.    APPOINTMENT OF LEAD PLAINTIFF

The Private Securities Litigation Reform Act ("PSLRA") "instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). "The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *See id.* The Ninth Circuit has interpreted the PSLRA as establishing "a simple three-step process for identifying the lead plaintiff pursuant to these criteria." *Id.*

### A.    Step One

Step one consists of meeting the PSLRA's notice requirement. *See id.* "The first plaintiff to file an action covered by the [PSLRA] must post this notice 'in a widely circulated national business-oriented publication or wire service.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). The notice must be published within twenty days of the filing of the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also alert putative class members "(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.*

Here, notice was published in *Business Wire* on December 15, 2017. *See* Lavallee Decl. Ex. 1. This clearly complied with the PSLRA's 20-day filing deadline. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). *Business Wire* is "a national, business-oriented news service." Lavallee Decl. ¶ 2. Thus, as required, the notice was posted "in a widely circulated national business-oriented publication or wire service." *See Cavanaugh*, 306 F.3d at 729 (quoting 15 U.S.C. § 78u-

4(a)(3)(A)(i)).  Finally, the notice announced the filing of this class action, described the asserted claims, specified the putative class period, and explained that any motion to be appointed lead plaintiff had to be filed within sixty days of December 15, 2017.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  For these reasons, the Court finds that the requirements of step one are met.

## B.    Step Two

Step two consists of identifying the presumptive lead plaintiff.  *See Cavanaugh*, 306 F.3d at 729–30.  There is a rebuttable presumption that the "most adequate plaintiff" is the one who "(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Thus, once the filing requirement of subsection (a)(3)(B)(iii)(I)(aa) is met, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *Cavanaugh*, 306 F.3d at 730.  Next, the district court "must . . . focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id.* (emphasis in original).  If so, that plaintiff is the presumptive lead plaintiff.  *Id.*

Here, Plaintiff Jordan and the Plymouth Group timely filed their respective motions to be appointed lead plaintiff on or before February 13, 2018, satisfying subsection (a)(3)(B)(iii)(I)(aa).  Plaintiff Jordan claims to have suffered losses totaling $485,136.56 as a result of his purchase of Aqua Metals stock during the Class Period.  *See* Dkt. No. 22 ("Prongay Decl."), Ex. C.  The Plymouth Group claims to have suffered losses totaling $741,295 as a result of the purchase of Aqua Metals stock during the class period.  Lavallee Decl. Exs. 5, 6.  This sum is greater than the $485,136.56 loss alleged by Jordan.  Therefore, the Plymouth Group "has the most to gain from the lawsuit."  *See Cavanaugh*, 306 F.3d at 730.

Next, the Court decides whether the Plymouth Group, the proposed lead plaintiff with the largest financial interest, meets the "typicality" and "adequacy" requirements of Rule 23(a).  The "district court has latitude as to what information it will consider in determining typicality and

4

adequacy." *Cavanaugh*, 306 F.3d at 732. Under Rule 23(a)(3), "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation marks omitted). "[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (internal quotation marks omitted). The Plymouth Group contends (and Jordan does not contest) both that its claims are typical of the class based on largely identical shared legal and factual issues, and that it is not subject to any unique defenses.

The Court finds that "typicality" is satisfied because the claims and defenses of the Plymouth Group "are typical of the claims and defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). Like other putative class members, the Plymouth Group alleges that during the Class Period, the group members acquired Aqua Metals stock at prices that were inflated by Defendants' material misrepresentations, and that they consequently suffered damages. *See* Lavallee Decl. Exs. 2, 3 (Plymouth Group certifications declaring under penalty of perjury that group members adopt the allegations of the complaint); *id.*, Exs. 5, 6 (Plymouth Group members' loss charts).

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court also finds that "adequacy" is satisfied because the Plymouth Group "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The Plymouth Group's "substantial financial stake in the outcome of this litigation, its timely filing of its motion, and the quality of its briefing all demonstrate that it is both motivated to, and capable of, vigorously pursuing this litigation." *See Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *5 (N.D. Cal. Apr. 28, 2016). The Plymouth County Retirement Association, having previously served as a lead and co-lead plaintiff in similar cases, is particularly well-suited to represent the putative class in this matter. *See* Lavallee Decl. Ex. 7 ¶ 3. Consequently, the Court holds that the requirements of step two are met.

5

### C.     Step Three

Step three consists of "giv[ing] other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730.  Here, Jordan asserts that the Plymouth Group will not adequately represent the class because it is a team of "unrelated" investors who lack a meaningful relationship to each other.  Dkt. No. 35 at 5–7.  Jordan also argues that the Plymouth Group's agreement to resolve intra-group disputes through a third-party arbitrator creates logistical issues and outsources its decision-making process to an uninterested outsider.  Dkt. No. 35 at 8–9; Lavallee Decl. Ex. 7 ¶ 16.

The PSLRA itself permits groups of persons to serve as a lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  But, in *Cavanaugh*, the Ninth Circuit left open the question of whether the PSLRA permits groups of persons without an existing relationship to aggregate their financial losses to become lead plaintiff.  306 F.3d at 731, n.8; *see also Nicolow*, 2013 WL 792642, at *5 (noting open question).  This Court has held that a group of previously-unrelated investors may show that it is an adequate class representative if it demonstrates that the group is small and cohesive, and that the individual members have demonstrated an ability to work together effectively on behalf of the class.  *Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2016 WL 2902286, at *8–9 (N.D. Cal. May 13, 2016).

Here, the Plymouth Group has demonstrated that it is fully capable of representing the class's interests effectively.   The members of the Plymouth Group attest in their joint declaration that they are "committed to maximizing recovery for the class and will ensure that lead counsel works expeditiously and effectively to bring about a fair resolution to the allegations in this action."  *See* Lavallee Decl. Ex. 7 ¶ 11.   The Group notes "the importance of joint decision-making and maintaining communication," and its commitment that the "Aqua Metals securities litigation will be vigorously prosecuted consistent with the requirements of the lead plaintiff provisions under the PSLRA and in the best interests of the class." *Id.* ¶¶ 14, 17.  Recognizing that courts have permitted groups to serve as lead plaintiff "when the group can function cohesively," the Plymouth Group members have pledged to "jointly communicate with proposed co-lead

counsel regarding the progress and prosecution of this action on a regular basis as well as when important decisions need to be made related to the action." *Id.* ¶¶ 13, 15. The Plymouth Group members will receive periodic status reports and hold regular joint calls to discuss and make decisions in the case, expect to reach consensus regarding litigation decisions, and have committed to making themselves available for any appearances, depositions and other meetings as necessary. *Id.* ¶¶ 15-17. As noted above, Plymouth County Retirement Association is an experienced lead plaintiff in similar actions. As for the arbitration provision, *id.* ¶ 16, the Court concludes that this provision in and of itself does not compel the conclusion that the Plymouth Group will not adequately represent the interests of the proposed class. The Court therefore finds that the Plymouth Group meets the Rule 23 typicality and adequacy requirements.

## III. APPOINTMENT OF LEAD COUNSEL

The Plymouth Group has moved for approval of its selection of Berman Tabacco and Levi & Korsinsky as class counsel. Plymouth Mot. at 15–16; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). The Court defers to the Plymouth Group's choice of lead counsel because its choice is not "so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on [its] willingness or ability to perform the functions of lead plaintiff." *See Cavanaugh*, 306 F.3d at 733; *see also id.* at 739 n.11 ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class."). Berman Tabacco and Levi & Korsinsky both have extensive experience as lead counsel in securities class actions. *See* Lavallee Decl. Exs. 8, 9. Approval of the Plymouth Group's selection of lead counsel is therefore merited. Nonetheless, Berman Tabacco and Levi & Korsinsky should allocate litigation responsibilities in a way that promotes the efficient representation of the putative class. While the Court will not order the two appointed firms to play particular roles in the litigation, it does order that Defendants' counsel may rely upon all agreements made with any appointed counsel, or other duly authorized representative of appointed counsel, and such agreements shall be binding on all plaintiffs. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2015 U.S. Dist. LEXIS 138654, at *7–8 (N.D. Cal. Oct. 8, 2015).

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the Singer and Jordan motions and **GRANTS** the Plymouth Group's motion.  The Plymouth Group is appointed as lead plaintiff for the putative class.  Berman Tabacco and Levi & Korsinsky are approved as lead counsel for the putative class.  The Court **SETS** a case management conference on Tuesday, June 5 at 2:00 p.m. to discuss setting a case schedule.  The parties are directed to meet and confer, and file a joint case management statement with proposed schedules on or before May 31, 2018.

**IT IS SO ORDERED.**

Dated:  5/23/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge