STEVEN M. SCHATZ, State Bar No. 118356
BORIS FELDMAN, State Bar No. 128838
DYLAN G. SAVAGE, State Bar No. 310452
ALEXANDER K. BREHNAN, State Bar No. 317776
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: sschatz@wsgr.com
        boris.feldman@wsgr.com
        dsavage@wsgr.com
        abrehnan@wsgr.com

Attorneys for Defendant
Stephen R. Clarke

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Aqua Metals, Inc. Securities Litigation, | CASE NO.: 4:17-CV-07142-HSG |
| | **CLASS ACTION** |
| | **DEFENDANT STEPHEN R. CLARKE'S SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT FOR VIOLATION OF SECURITIES LAWS** |
| | Date:       January 30, 2020 |
| | Time:       2:00 p.m. |
| | Courtroom:  2, 4th Floor |
| | Judge:      Haywood S. Gilliam |

Dr. Stephen R. Clarke submits this Supplemental Brief in Further Support of Defendants'
Motion to Dismiss Plaintiff's SAC.

### ARGUMENT[1]

There are defects in Plaintiff's SAC that even forty pages of briefing, on top of the 550
paragraphs and over 200 pages in its Complaint, cannot overcome.  Plaintiff's opposition
("Opp.") to Defendants' motion to dismiss ("Motion") does not grapple with a number of key
and dispositive issues raised in Defendants' briefs ("Defs. Br." and "Clarke Br.").  Among other
things, though Plaintiff attempts to portray Clarke as perhaps the principal actor in its
AquaMetals tale, when scrutinized, Plaintiff's assertions rely on sleight of hand, out-of-context
statements, persistent efforts at creating confusion, and a counter-sensical theory of scienter.
Accordingly, Plaintiff has not alleged viable securities claims, and Defendants' Motion should be
granted.[2]

***First***, Plaintiff refuses to meaningfully address that Clarke not only held on to his stock
both during and after the Class Period, he repeatedly purchased more.  *See* Clarke Br. at 4 & RJN
Ex. 31.  Plaintiff tries to portray this as no big deal, citing cases for the proposition that the
absence of stock sales is not dispositive – but it is.  Opp. at 37.  A typical securities case involves
allegations that a defendant sold stock in advance of the company disclosing bad news to the
market.  Here, however, Clarke did the opposite:  he continued to invest in AquaMetals, which
reveals a belief in the Company that is antithetical to the entire premise of the claims against
him.  Simply put, he put his money where his mouth was, which renders Plaintiff's proffered
narrative implausible.  Dismissal is appropriate on this ground.  *See, e.g.*, *Eclectic Props. E., LLC
v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014); *In re Century Aluminum Co.
Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).  Plaintiff's half-hearted attempt to distinguish
Clarke's cited cases on the basis that they found "patterns of insider trading [] negated already

---

[1] Clarke incorporates by reference Defendants' Reply Memorandum of Law in Further
Support of Motion to Dismiss, filed concurrently herewith.  All capitalized terms not defined
herein have the same meaning as set forth in Clarke's Supplemental Brief (ECF No. 129).

[2] Plaintiff also suggests that Defendants concede the merits of the claims for scheme liability
and control person liability, to the extent premised thereupon (Opp. at 1, 8-9).  That is directly
contradicted by the reservation of rights in Defendants' moving brief.  Defs. Br. at 1 n.1.

weak allegations of scienter" (Opp. at 38 n.39) ignores clear language stating that stock purchases do not support a strong allegation of scienter, and also fails to address the underlying rationale for such a holding.  Clarke Br. at 4-5.

*Second*, Plaintiff persists in conflating "AquaRefining" with the overall recycling process, even after Defendants specifically highlighted the distinction between the two in their motion to dismiss papers.  In other words, Plaintiff's case continues to be premised on the notion that "AquaRefining" as used in SEC filings and press releases refers to the entire process of lead acid battery recycling, from breaker to ingot.  But as Defendants pointed out, "AquaRefining" specifically refers to the core technology that allows lead to be recycled without high-heat smelters.  *See, e.g.*, Defs. Br. at 3-8, 19-21; Clarke Br. at 3.  Plaintiff does not (as it cannot) dispute that process works – notwithstanding its baseless misconstruction of Defendants' supposed "admission" that technology is "unproven" (*see infra* p. 2) – nor does it allege facts establishing that investors would have failed to understand this distinction.  Instead, it hopes the Court is confused about the meaning of this very precise language, otherwise ignoring this fundamental problem with its SAC.  The SAC should be dismissed on this ground alone.

*Third*, in response to Defendants' (well-taken) point that any problems were either unanticipated or believed to be soluble, Plaintiff stakes its case on two things:  Defendants' alleged admissions about the state of AquaRefining, and the CWs' alleged testimony.  Opp. at 2.  With respect to the "admissions," Plaintiff relies on an out-of-context quotation that "the AquaRefining technology was 'unproven[.]'"  Opp. at 8, 13 & n.10.  But as even Plaintiff concedes (*id.* at 13 n.10), the immediately preceding sentence clarifies that the Company is stating its "***business model*** . . . has not been proven," including because its "lead recycling ***production line*** is the first-of-its-kind" and nobody had "successfully built a ***production line*** that commercially recycles LABs without smelting."  RJN Ex. 27 at 20 (emphasis added); *see also* Defs. Br. at 22-23.  As discussed extensively in Defendants' papers, it is those unanticipated production-related issues – such as integrating the battery breaker and sticky lead, neither of which relate to the chemical process of AquaRefining – that Clarke believed were soluble and resulted in unforeseeable delays.  Defs. Br. at 2-8, 17-18; Clarke Br. at 3-6.

Similarly, Plaintiff makes the misleading assertion that Defendants admitted the "commissioning process was not complete and the modules . . . were only in testing mode[.]" Opp. at 8, 18. Here again, Plaintiff tries to engage in a game of double-speak. *See, e.g.*, Defs. Br. at 22. "Commissioning" simply means that modules are installed and ready to operate. *Id.* Plaintiff does not dispute that was the case. Rather, Plaintiff's real complaint appears to be that it erroneously conflated commissioning with commercialization. But Plaintiff provides no basis to recover for that unfounded assumption as securities fraud.

**Fourth**, regarding the CWs, Plaintiff relies on the false premise that showing Clarke knew about production-related problems means Plaintiff has established Clarke believed AquaRefining itself was inoperable. *See* Opp. at 32-35. That is not the case. With respect to CW1, the only alleged conversations with Clarke are ones where potential solutions to sticky lead were discussed. Opp. at 34. That Clarke was working to fix the problem, however, does not establish that he thought AquaRefining did not work. *See* Clarke Br. at 5-6. The same is true for CW4, who claims to have been present simply for "first-hand conversations . . . about the problems," and CW5, who alleges he or she "attend[ed] meetings with Clarke and Mould where the problems were discussed[.]" Opp. at 34. Significantly, Plaintiff has eschewed any discussion about the specifics of the purported communications and instead chooses the vaguest of references.[3]

**Fifth**, Plaintiff again asserts that IB and JCI were hoodwinked by the Defendants, a claim that is illogical on its face given their continued relationships with the Company. Opp. at 20-21. Plaintiff tries to explain this away by pointing to IB's stock sales and that the deadline to conclude discussions with JCI about a definitive agreement has been moved, but does not and cannot dispute that the relationships are ongoing. *Compare* Opp. at 21, *with* Clarke Br. at 3. Plaintiff's speculation about the stock sales is particularly unwarranted as it ignores benign explanations for selling stock and also turns on the assumption, supported by no factual

---

[3] Plaintiff appears to concede that CW2 and CW3 had no direct contact at all with Clarke. Opp. at 34.

1  allegations in the SAC, that IB committed the crime of insider trading.  *See* Opp. at 21; SAC ¶¶

2  500-502.

3  **<u>CONCLUSION</u>**

4       In addition to the reasons described in the Defendants' Motion and for the above reasons,

5  Clarke respectfully requests that the SAC be dismissed with prejudice as asserted against him.

6

7  Dated:  December 20, 2019              WILSON SONSINI GOODRICH & ROSATI
                       Professional Corporation

8

9

10                 By: /s/ Steven M. Schatz
                        Steven M. Schatz

11                      Boris Feldman
                        Dylan G. Savage

12                      Alexander K. Brehnan
                        650 Page Mill Road

13                      Palo Alto, CA 94304-1050
                        Telephone:  (650) 493-9300

14                      Facsimile:   (650) 565-5100
                        Email:   sschatz@wsgr.com

15                             boris.feldman@wsgr.com
                               dsavage@wsgr.com

16                             abrehnan@wsgr.com

17                      Attorneys for Defendant
                        Stephen R. Clarke

18

19

20

21

22

23

24

25

26

27

28