Nicole Lavallee (SBN 165755)
Kristin J. Moody (SBN 206326)
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        kmoody@bermantabacco.com

Shannon L. Hopkins
Stephanie A. Bartone
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 304
Stamford, CT 06901
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
Email: shopkins@zlk.com
        sbartone@zlk.com

*Counsel for the Lead Plaintiff Plymouth County Group
and Co-Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE AQUA METALS, INC. SECURITIES LITIGATION | Lead Case No.: 4:17-cv-07142-HSG |
| | **CLASS ACTION** |
| | **LEAD PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This document Relates to:<br>All Actions. | |
| | Date:  September 30, 2021<br>Time: 2:00 p.m.<br>Dept.: 2, 4th floor<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

1

## **TABLE OF CONTENTS**

2

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... viii

3

NOTICE OF MOTION AND MOTION ................................................................................... 1

4

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

5

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 2

6

II. BACKGROUND ............................................................................................................. 3

7

III. ARGUMENT ................................................................................................................... 6

8

    A. The Court Should Preliminarily Approve The Settlement ..................................... 6

9

        1. The Settlement Agreement Resulted From Arm's-Length
           Negotiations And Is Not The Product Of Collusion ............................... 7

10

        2. The Settlement Falls Within The Range For Approval ........................... 10

11

        3. The Settlement Has No Obvious Deficiencies And Does Not
           Improperly Grant Preferential Treatment To The Lead Plaintiff Or
           To Segments Of The Settlement Class ..................................................... 11

12

13

        4. The Proceedings Are Sufficiently Advanced To Permit Preliminary
           Approval Of The Settlement .................................................................... 12

14

15

    B. Certification Of The Settlement Class Under Fed R. Civ. P. 23 Is
       Appropriate ........................................................................................................... 13

16

        1. The Settlement Class is Sufficiently Numerous ..................................... 14

17

        2. Common Questions Of Fact Or Law Exist .............................................. 14

18

        3. Lead Plaintiff's Claims Are Typical Of Those Of The Settlement
           Class ......................................................................................................... 15

19

20

        4. Lead Plaintiff And Lead Counsel Will Fairly And Adequately
           Represent The Interests Of The Settlement Class .................................. 16

21

        5. The Requirements of Rule 23(b)(3) Are Also Satisfied ......................... 17

22

           a) Common Legal And Factual Questions Predominate .................. 17

23

           b) A Class Action Is The Superior Means To Adjudicate The
              Claims Raised ............................................................................... 18

24

25

    C. The Proposed Notice Plan Meets All Requirements............................................. 18

26

    D. The Proposed Plan Of Allocation Should Be Preliminarily Approved ............... 20

27

    E. The Intended Request For Attorneys' Fees And Expenses And An Award
       For Costs And Expenses Of Lead Plaintiff............................................................ 22

28

F.      The Claims Administrator.................................................................... 23

G.      Schedule For Final Approval .............................................................. 24

IV.     CONCLUSION..................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ........................................................... 6

4

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ............................................................... 16, 17, 18

5

6

*Arena v. Intuit Inc.*,
    No. 19-CV-02546-CRB, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ...................... 6

7

8

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001),
    *overruled on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005) .................... 15

9

10

*Austin v. Foodliner, Inc.*,
    No. 16-CV-07185-HSG, 2019 WL 2077851 (N.D. Cal. May 10, 2019) ................... 23

11

*Azar v. Blount Int'l, Inc.*,
    No. 3:16-cv-0483,  2019 WL 7372658 (D. Or. Dec. 31, 2019) .............................. 10

12

13

*Bisaccia v. Revel Sys. Inc.*,
    No. 17-CV-02533-HSG, 2019 WL 3220275 (N.D. Cal. July 17, 2019) .................... 23

14

15

*Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*,
    No. 12-cv-05259-JST, 2013 WL 6145706 (N.D. Cal. Nov. 21, 2013) .................... 21

16

*Camberis v. Ocwen Loan Serv. LLC*,
    No. 14-cv-02970-EMC, 2015 WL 7995534 (N.D. Cal. Dec. 7, 2015) .................... 23

17

18

*Carlin v. DairyAmerica, Inc.*,
    328 F.R.D. 393 (E.D. Cal. 2018) ........................................................... 16

19

20

*City P'ship v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ............................................................... 8

21

22

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................... 7

23

*Daniels v. Jenson*,
    No. 2:11-cv-00298-JCM-CWH, 2013 WL 12317809 (D. Nev. Feb. 12, 2013) ......... 6

24

25

*Duk v. MGM Grand Hotel, Inc.*,
    320 F.3d 1052 (9th Cir. 2003) ............................................................... 6

26

27

*Durrett v. Housing Auth. of Providence*,
    896 F.2d 600 (1st Cir. 1990) ............................................................... 6

28

*Fowler v. Wells Fargo Bank, N.A.*,
  No. 17-CV-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019) .................................. 23

*Gretler v. Kaiser Found. Health Plan, Inc.*,
  No. EDCV 18-02175 AG (KKx), 2019 WL 8198308 (C.D. Cal. Mar. 18, 2019) ................... 9

*Hale v. Manna Pro Prods., LLC*,
  No. 2:18-CV-00209-KJM-DB, 2020 WL 3642490 (E.D. Cal. July 6, 2020)........................ 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998),
  *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541 (2011)........................................................................... passim

*Helmick v. Columbia Gas Transmission*, C.A.
  No. 2:07-cv-00743, 2010 WL 2671506 (S.D.W. Va. July 1, 2010) ....................................... 22

Hendricks v. Starkist Co,
  No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016),
  *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018)............................ 23

*Hickey v. City of Seattle*,
  236 F.R.D. 659 (W.D. Wash. 2006) ....................................................................................... 14

*In re Aqua Metals Sec. Litig.*,
  No. 17-CV-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ................................ 17

*In re Biolase, Inc. Sec. Litig.*,
  No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)..................... 21

*In re Charter Commc'ns., Inc.*,
  No. MDL 1506, 4:02-CV-1186, 2005 WL 4045741 (E.D. Mo. June 30, 2005) .................... 21

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................................ 10

*In re Excess Value Ins. Coverage Litig.*,
  No. M-21-84RMD, MDL 1339, 2004 WL 1724980 (S.D.N.Y. July 30, 2004)...................... 8

*In re First Capital Holdings Corp. Fin. Prods Sec. Litig.*,
  MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .................................................. 8

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................... 8

*In re Heritage Bond Litig.*,
  546 F.3d 667 (9th Cir. 2008) ................................................................................................. 7

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................................... 8

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) ...................................... 7

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................... 11

*In re Portal Software, Inc. Sec. Litig.*,
   No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ................... 10, 11, 18, 19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................... 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020).......................... 15

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 8, 10

*In re Toys "R" Us Antitrust Litig.*,
   191 F.R.D. 347 (E.D.N.Y. 2000) ......................................................................... 8

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ......................................................................... 22

*In re Wells Fargo Collateral Prot. Ins. Litig.*,
   No. SAML 17-02797AG (KESx), 2019 WL 6219875 (C.D. Cal. Nov. 4, 2019) ..................... 8

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ..................................................................... 15, 16

*Jones v. Dominion Res. Servs., Inc.*,
   601 F. Supp. 2d 756 (S.D.W. Va. 2009) ........................................................... 22

*Mild v. PPG Indus., Inc.*,
   No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ..................... 15

*Moorer v. StemGenex Med. Grp., Inc.*,
   No. 16-cv-02816-AJB-NLS, 2021 WL 640842 (S.D. Cal. Jan. 8, 2021) ........................ 6, 7, 8

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................... 6, 7

*Nursing Home Pension Fund v. Oracle Corp.*,
   No. C01-00988 MJJ, 2006 WL 8071391 (N.D. Cal. Dec. 20, 2006) ..................... 14

*Officers for Justice v. Civil Serv. Comm'n. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................... 8

*Opperman v. Kong Techs. Inc.*,
   No. 13-cv-00453, 2017 U.S. Dist. LEXIS (N.D. Cal. July 6, 2017) ................... 12, 22

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ............................................................. 22

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ........................................................... 22

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .............................................................. 15

*Toure v. Cent. Parking Sys. of N.Y.*,
   No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ............................. 15

*Uschold v. NSMG Shared Servs., LLC*,
   333 F.R.D. 157 (N.D. Cal. 2019) ........................................................ 7

*Vataj v. Johnson*,
   No. 19-cv-06996-HSG, 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .......................... passim

**Statutes**

15 U.S.C. § 78u-4(a)(4) ..................................................................... 22

15 U.S.C. § 78u-4(a)(7) ..................................................................... 18

**Other Authorities**

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2020 Review and Analysis*,
   Cornerstone Research (2021) ............................................................. 11

*Manual for Complex Litigation (Fourth)* § 13.14 (May 2021 Update) ........................... 7

**Rules**

Fed. R. Civ. P. 23 ...................................................................... 16, 18, 19

Fed. R. Civ. P. 23(a) ....................................................................... 14, 17

Fed. R. Civ. P. 23(a)(2) .................................................................... 14

Fed. R. Civ. P. 23(b)(3) .................................................................... 17, 18

Fed. R. Civ. P. 23(b)(3)(D) ................................................................. 18

Fed. R. Civ. P. 23(c)(3) .................................................................... 19

Fed. R. Civ. P. 23(e) ....................................................................... 6, 7

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................. 12

Fed. R. Civ. P. 23(g)(1)(A) ................................................................. 17

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................................ 17

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed Settlement[1] of this action is within the range of fairness, reasonableness and adequacy so as to warrant: (a) the Court's preliminary approval; (b) the dissemination of Notice of its terms to proposed Settlement Class Members; and (c) setting a hearing date for final approval of the Settlement as well as an application for attorneys' fees and reimbursement of expenses and an award to Lead Plaintiff for its costs and expenses in connection with the litigation.

2.      Whether a Settlement Class should be certified.

3.      Whether the proposed Notice adequately apprises the Settlement Class Members about the terms of the Settlement and their rights with respect to it.

4.      Whether the proposed Plan of Allocation of settlement proceeds should be preliminarily approved.

5.      Whether the Claim Forms are sufficient to be disseminated to the Class.

6.      Whether Lead Plaintiff should be appointed Class Representative and Berman Tobacco and Levi & Korsinsky, LLP should be appointed Class Counsel for purposes of implementing the proposed Settlement.

7.      Whether A.B. Data, Ltd. ("A.B. Data") should be appointed as the Claims Administrator to administer the notice and claims process.

---

[1] All capitalized terms not otherwise defined herein are defined in the Stipulation of Settlement, dated July 2, 2021 (the "Stipulation").

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 30, 2021, at 2:00 p.m. in Courtroom 2, 4th Floor, the Honorable Haywood S. Gilliam, Jr., United States District Court Judge presiding, located at 1301 Clay Street, Oakland, California, or at such other time as the Court determines, Lead Plaintiff the Plymouth County Group (consisting of Plymouth County Retirement Association, Denis Taillefer and his private company, 1103371 Ontario Ltd.) ("Lead Plaintiff") will move this Court for an order: (1) preliminarily approving a proposed settlement of this action (the "Settlement"); (2) preliminarily certifying a class and appointing Lead Plaintiff as Class representative and Lead Counsel as Class Counsel for purposes of implementing the proposed Settlement (the "Settlement Class"); (3) approving the form and manner of giving notice to the settlement class ("Notice"); (4) preliminarily approving the proposed allocation of settlement proceeds (the "Plan of Allocation"); (5) approving the Proof of Claim and Release form ("Claim Form") to be disseminated to the Settlement Class; (6) scheduling a hearing before the Court to determine whether the proposed Settlement, Plan of Allocation and fee and expense requests should be given final approval; and (7) appointing A.B. Data as the Claims Administrator to administer the Notice and claims process ("Preliminary Approval Order").   The proposed Settlement provides for the payment of $7 million, consisting of $6.5 million in cash and $500,000 in either Aqua Metals common stock or cash, plus interest earned thereon, for the benefit of the proposed Settlement Class and, if approved, would fully resolve all claims against all Defendants.

The grounds for this Motion are that: (1) the proposed Settlement and Plan of Allocation are within the range of fairness, reasonableness and adequacy so that Notice should be disseminated to members of the proposed Settlement Class ("Settlement Class Members"); (2) the criteria applicable to certifying a Settlement Class are met; and (3) the proposed Notice adequately apprises the Settlement Class Members about the terms of the Settlement and their rights with respect to it.

This Motion is based on the Memorandum of Points and Authorities submitted below, the accompanying Declaration of Kristin J. Moody ("Moody Declaration" or "Moody Decl."),

Declaration of Adam D. Walter ("Walter Decl."), the accompanying Stipulation, and all other pleadings and matters of record.

Defendants do not oppose this Motion.  *See* Moody Decl. ¶19.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Lead Plaintiff respectfully submits this Memorandum of Points and Authorities in support of its unopposed motion for preliminary approval of the proposed Settlement, providing for a $7,000,000 payment, consisting of $6.5 million in cash and $500,000 in Aqua Metals common stock or cash, to the proposed Settlement Class in consideration for resolving all claims alleged in the above-captioned Action.  If Aqua Metals elects to provide the $500,000 in Aqua Metals common stock, the stock will be readily tradeable and Lead Plaintiff, through its counsel, intends to immediately sell the and distribute the proceeds to the Class along with the other $6.5 million. Moody Decl. ¶9.  A copy of the Stipulation is attached as Exhibit 1 to the Moody Declaration. Lead Plaintiff seeks an order: (1) preliminarily approving a proposed Settlement of this Action; (2) preliminarily certifying a class and appointing Lead Plaintiff as Class representative and Lead Counsel as Class Counsel for purposes of implementing the proposed Settlement Class; (3) approving the form and manner of giving Notice to the Settlement Class; (4) preliminarily approving the proposed Plan of Allocation; (5) approving the Claim Form to be disseminated to the Settlement Class; (6) scheduling a hearing before the Court to determine whether the proposed Settlement, Plan of Allocation and fee and expense requests should be given final approval; and (7) appointing A.B. Data as the Claims Administrator to administer the notice and claims process ("Preliminary Approval Order").[2]

As provided herein, the proposed Settlement and Plan of Allocation are within the range of fairness, reasonableness and adequacy so that Notice should be disseminated to the proposed Settlement Class Members; the criteria applicable to certifying a Settlement Class are met; and

---

[2] Each of the documents to be sent to the Settlement Class Members (which are annexed as exhibits to the proposed Preliminary Approval Order and attached as Exhibit A to the Stipulation) is in a form typically used in securities fraud class actions.

the proposed Notice adequately apprises Settlement Class Members about the terms of the Settlement and their rights with respect to it.

## II.   **BACKGROUND**

Beginning on December 15, 2017, three class action complaints were filed in this Court against Aqua Metals, Inc. ("Aqua Metals" or the "Company") and certain of its directors and officers.  By Order dated March 29, 2018, this Court consolidated the three related class actions then pending in the Northern District of California into one class action lawsuit entitled *In re Aqua Metals, Inc. Securities Litigation*, No. 4:17-cv-07142.  *See* Moody Decl. ¶2.  On May 23, 2018, this Court appointed the Plymouth County Group as Lead Plaintiff for the Class and approved Lead Plaintiff's choice of the law firms of Berman Tabacco and Levi & Korsinsky, LLP as Lead Counsel in the class action.  *See id*.

On July 20, 2018, after extensive investigation by Lead Counsel, Lead Plaintiff filed a Consolidated Complaint for Violations of Securities Laws alleging claims under the Securities and Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act") ("Consolidated Complaint").  *See* Moody Decl. ¶3.  On September 18, 2018, all defendants moved the Court to dismiss the Consolidated Complaint.  *See id*.  On August 14, 2019, the Court granted in part and denied in part defendants' motion to dismiss, denying defendants' motion to dismiss the Section 10(b), Rule 10b-5(a) and (c) scheme liability claim and Section 20(a) control person liability claim, while granting defendants' motion to dismiss the Section 10(b), Rule 10b-5(b), Section 11, and Section 15 claim with leave to amend.  *See id*.

On September 20, 2019, after further investigation and refinement of the claims, Lead Plaintiff filed the Amended Consolidated Complaint for Violation of Securities Laws ("Amended Complaint"), which is the operative complaint in this Action.  *See* Moody Decl. ¶3.  The Amended Complaint asserts only Exchange Act claims.  *Id*.  The Amended Complaint alleges that Defendants[3] artificially inflated Aqua Metals' stock price by misleading investors

---

[3] The Amended Complaint names Aqua Metals and the "Individual Defendants" Stephen R. Clarke, Thomas Murphy, and Selwyn Mould (the Company and the Individual Defendants are collectively referred to as the "Defendants") as defendants (Moody Decl. ¶3).

about its AquaRefining lead recycling technology and engaging in a scheme whereby Defendants orchestrated on-site visits and demonstrations at Aqua Metals' facilities that deliberately concealed problems concerning the testing, development, commercialization and operations of its AquaRefining technology, while, as detailed by former employees, the AquaRefining design was fundamentally flawed such that it severely malfunctioned, was uncapable of running for any length of time, constantly broke down and produced little to no pure AquaRefined lead.  The Amended Complaint also alleges Defendants also prompted and encouraged its visitors to issue reports describing their visits.  Lead Plaintiff alleges that when the truth of Aqua Metals' development of AquaRefining technology was revealed, Aqua Metals' stock price plummeted through a series of one-day drops of approximately 26%, 23.6% and 18%.  The Amended Complaint alleges that at the end of the Class Period, Defendants conceded that the technology was unproven and malfunctioning and only running in test mode, the very issues former employees identified in the Amended Complaint as existing throughout the Class Period.  In their Answer, Defendants denied all allegations of wrongdoing.

On November 1, 2019, Defendants filed a motion to dismiss the Amended Complaint's Section 10(b), Rule 10b-5(b) misrepresentation claim and the Section 20(a) control person claim as it relates to the misrepresentation claim.  *See* Moody Decl. ¶4.  Lead Plaintiff thereafter opposed the motion on December 6, 2019.  *See id*.  On November 16, 2020, the Court issued its Order granting Defendants' Motion to Dismiss ("2020 MTD Order").  *See id*.  In its order, the Court dismissed the Section 10(b), Rule 10b-5(b) misrepresentation claim and the Section 20(a) claim as it relates to the misrepresentation claim.  *Id*.  Lead Plaintiff's prior sustained scheme liability claim under Section 10(b), Rule 10b-5(a) and (c) and Section 20(a) control person liability claim as it relates to the scheme claim remained actionable.  *Id*.

The parties conferred and agreed to participate in a mediation session scheduled for December 9, 2020.  In light of the mediation date, the parties stipulated that the case management conference scheduled for December 8, 2020 be deferred (ECF No. 142), which deferral the Court ordered (ECF No. 143).

1      Prior to the mediation session, the parties exchanged mediation statements, including their

2  positions on liability and damages.  On December 9, 2020, the parties engaged in intensive, arm's-

3  length settlement negotiations under the close supervision of an experienced, noted mediator, Jed

4  D. Melnick, Esq. of JAMS.  *See* Moody Decl. ¶6.  The parties were unable to reach a settlement

5  at the mediation but continued to negotiate through Mr. Melnick over the next several months.

6  *Id.*

7      The parties attended a Case Management Conference on February 9, 2021 and March 16,

8  2021.  *See* Moody Decl. ¶7.  In connection with these conferences and the onset of discovery, the

9  parties negotiated a litigation schedule for the case through trial.  *Id.*  Thereafter, the parties

10  commenced discovery and exchanged initial disclosures and Lead Plaintiff served its first set of

11  interrogatories and fifty-one requests for production on Defendant Aqua Metals.  *See* Moody

12  Decl. ¶8. On April 6, 2021, Defendants filed an answer.  *Id.*

13      On April 8, 2021, after exchanging numerous offers and counteroffers, the parties agreed

14  to a mediator's proposal that the parties settle the claims asserted in this action for $7 million,

15  consisting of $6.5 million in cash and $500,000 in Aqua Metals stock.  *Id.* ¶9.  On May 24, 2021,

16  the parties executed an agreement in principle memorializing the Settlement amount and other

17  key terms to settle this Action.  *Id.*  On July 2, 2021, after further negotiations, the parties executed

18  a Stipulation of Settlement, which is attached as Exhibit 1 to the Moody Declaration.  *Id.*

19      In connection with the motions to dismiss, the mediation and settlement negotiations and

20  preparing their Joint Case Management Statements, the parties exchanged extensive analyses of

21  the legal and factual issues, including issues relating to the investor and analyst visits to Aqua

22  Metals' facilities ("site visits"), scienter and the appropriate class period and damages for the

23  surviving claims.  *See* Moody Decl. ¶10.  For example, as they argued in the February 2, 2021

24  Joint Case Management Statement, Defendants claim that the class period cannot start before

25  May 31, 2017, which Defendants argue is the date of the first analyst site visit.  *Id.*  Truncating

26  the class period in this way would severely limit potentially recoverable damages, as discussed

27  below.  *Id.*  Defendants further argue that the Court's 2020 MTD Order finding a failure to

28

1   adequately allege falsity or scienter with regard to the misrepresentation claim undermines the

2   surviving scheme liability claim. *Id.*   Defendants would also likely argue that even if Lead

3   Plaintiff could establish liability, Settlement Class Members will have trouble showing what part

4   of the stock-price decline is attributable to the alleged fraud rather than other company-specific

5   bad news. *Id.*   While Lead Plaintiff believes that these arguments lack merit, there remains a

6   substantial risk that Defendants could prevail on one or more of these arguments. *Id.* ¶¶12-13.

7   Thus, Lead Plaintiff believes it is in the interest of the Settlement Class to offset these risks by

8   settling at this phase of the litigation. *Id.* ¶13.

9   **III.   ARGUMENT**

10          **A.   The Court Should Preliminarily Approve The Settlement**

11          Rule 23(e) of the Federal Rules of Civil Procedure ("Rule") requires judicial approval for

12   any compromise of claims brought on a class basis.   Approval of a proposed settlement is a matter

13   within the broad authority of the district court.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

14   1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

15   338, 131 S. Ct. 2541 (2011); *Daniels v. Jenson*, No. 2:11-cv-00298-JCM-CWH, 2013 WL

16   12317809, at *1 (D. Nev. Feb. 12, 2013) (citing *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052,

17   1060-61 (9th Cir. 2003)).   The district court's decision, however, is "restrained by 'the clear

18   policy in favor of encouraging settlements.'"  *Durrett v. Housing Auth. of Providence*, 896 F.2d

19   600, 604 (1st Cir. 1990) (citation omitted).   Indeed, "there is a strong judicial policy that favors

20   settlements, particularly where complex class action litigation is concerned."  *Allen v. Bedolla*,

21   787 F.3d 1218, 1223 (9th Cir. 2015) (citation omitted).  *See also Arena v. Intuit Inc.*, No. 19-CV-

22   02546-CRB, 2021 WL 834253, at *6 (N.D. Cal. Mar. 5, 2021) (same).

23          Preliminary approval of a proposed settlement is the first in a two-step process required

24   before a class action may be settled.  *Moorer v. StemGenex Med. Grp., Inc.*, No. 16-cv-02816-

25   AJB-NLS, 2021 WL 640842, at *2 (S.D. Cal. Jan. 8, 2021); *Nat'l Rural Telecomm. Coop. v.

26   DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).   "[T]he Court first determines whether a

27   proposed class action settlement deserves preliminary approval and then, after notice is given to

28

class members, whether final approval is warranted. *DIRECTV, Inc.,* 221 F.R.D. at 525; *see also Manual for Complex Litigation (Fourth)* § 13.14 (May 2021 Update). Preliminary approval permits notice to be given to class members of a hearing on final settlement approval, at which class members and the settling parties may be heard with respect to final approval.

"A district court may approve a proposed settlement in a class action only if the compromise is fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.,* 546 F.3d 667, 674-75 (9th Cir. 2008) (citing Fed. R. Civ. P. 23(e)); *accord Moorer,* 2021 WL 640842, at *2; *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) ("Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.'") (citations omitted). "Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Vataj v. Johnson,* No. 19-cv-06996-HSG, 2021 WL 1550478, at *7 (N.D. Cal. Apr. 20, 2021) (Gilliam, J.)

As discussed below, under these criteria, Lead Plaintiff respectfully submits that preliminary approval of the proposed Settlement should be granted and dissemination of the Notice should be ordered.

### 1. The Settlement Agreement Resulted From Arm's-Length Negotiations And Is Not The Product Of Collusion

The Court should look to whether the proposed settlement appears to be the product of collusion among the negotiating parties or other conflicts of interest. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000); *Vataj,* 2021 WL 1550478, at *7; *Uschold v. NSMG Shared Servs., LLC,* 333 F.R.D. 157, 169 (N.D. Cal. 2019). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078,

1080 (N.D. Cal. 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004). *See also Moorer*, 2021 WL 640842, at * 4 (giving deference to experienced counsel); *Hanlon*, 150 F.3d at 1027 (courts are deferential "to the private consensual decision of the parties" (citing *Officers for Justice v. Civil Serv. Comm'n. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982))).

Indeed, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See Tableware*, 484 F. Supp. 2d at 1080; *City P'ship v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *In re First Capital Holdings Corp. Fin. Prods Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding that belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMD, MDL 1339, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (citation omitted); *In re Wells Fargo Collateral Prot. Ins. Litig.*, No. SAML 17-02797AG (KESx), 2019 WL 6219875, at *3 (C.D. Cal. Nov. 4, 2019) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length.") (alteration in original) (citation omitted).

Courts may also consider whether the settlement was reached with the assistance of an experienced, noted mediator. *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("[m]ost significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007); *Moorer* 2021 WL 640842, at *3; *Gretler v. Kaiser Found. Health Plan, Inc.*, No. EDCV 18-02175 AG (KKx), 2019 WL 8198308, at *3

1    (C.D. Cal. Mar. 18, 2019) ("One important factor is that the parties reached the settlement after

2    significant arms-length negotiations with a third-party mediator.") (citation omitted).

3            The proposed Settlement here is the product of extensive, arm's-length negotiations by

4    experienced counsel, supervised by an experienced mediator, Jed D. Melnick, Esq. of JAMS. *See*

5    Moody Decl. ¶6.   On April 8, 2021, after exchanging numerous offers and counteroffers, the

6    parties agreed to a mediator's proposal that the parties settle the claims asserted in this action for

7    $7 million, consisting of $6.5 million in cash and $500,000 in Aqua Metals stock. *Id*. ¶9.   The

8    negotiations were informed by the knowledge Lead Counsel gained by their investigation and

9    analysis of the facts and legal issues, including consultation with Lead Plaintiff's damage

10   consultant. *See* Moody Decl. ¶¶6, 11-12.   Based on their familiarity with the factual and legal

11   issues, and armed with a thorough understanding of the strength and weaknesses of the claims at

12   issue, the parties were able to negotiate a fair settlement, taking into account the costs and risks

13   of continued litigation.   The negotiations were at all times hard-fought and have produced a result

14   that the settling parties believe to be in their respective interests.

15           Lead Counsel, who have a great deal of experience in the prosecution and resolution of

16   complex class actions and securities litigation, have carefully evaluated the merits of the case and

17   the proposed Settlement.   Lead Counsel believe that they had a strong case and that there was

18   sufficient evidence to proceed to the jury on their claims.   They recognize, however, that

19   Defendants would strenuously challenge the allegations and proof regarding each element of the

20   causes of action, including a deceptive or manipulative act, scienter and loss causation, and that

21   certification of the class would be hotly contested. *See* Moody Decl. ¶¶12-13.   For example,

22   Defendants would vigorously argue that (1) the Court's 2020 MTD Order finding a failure to

23   adequately allege falsity or scienter with regard to the misrepresentation claims undermines the

24   scheme liability claim and (2) as the only surviving claims relate to the scheme claims, the class

25   period cannot begin before May 31, 2017 (which would substantially impact damages). *See*

26   Moody Decl. ¶10; ECF No. 149 at 7 (arguing same in the February 2, 2021 Joint Case

27   Management Statement).   Lead Counsel recognize that these challenges could pose significant

28

risks regarding their ability to prevail and the scope of damages if the case were to proceed to trial. Based on their extensive experience, Lead Counsel understand the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict. As such, Lead Counsel believes the Settlement is fair, reasonable and adequate, and in the best interest of the Settlement Class. *See* Moody Decl. ¶13.

### 2.      The Settlement Falls Within The Range For Approval

When evaluating the adequacy of a settlement, courts balance a plaintiff's expected recovery against the value of the offer. *See Vataj*, 2021 WL 1550478, at *9; *Tableware*, 484 F. Supp. 2d at 1080; *In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). This complex case involves a range of disputed issues including issues of employing a deceptive scheme, damages, loss causation, scienter and class certification. While Lead Plaintiff believes that the Class has meritorious claims, Defendants have denied, and continue to deny, each and all of the claims and contentions asserted by Lead Plaintiff. *See* Moody Decl. ¶10. Defendants would also likely argue that even if Lead Plaintiff could establish liability, Settlement Class Members will have trouble showing what part of the stock-price decline is attributable to the alleged fraud rather than other company-specific bad news. *Id.*

Further, the $7 million recovery under the proposed Settlement constitutes approximately 7.32% of the most likely recoverable damages assuming Lead Plaintiff prevailed on all claims against the Defendants. *See* Moody Decl. ¶12. This recovery is in line with and exceeds recent comparable class action settlements and is a very good result for any stage of the litigation. *See, e.g., Vataj*, 2021 WL 1550478, at *9 (preliminarily approving settlement that was 2% of estimated damages); *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-0483, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement fund amount of 4.63 to 7.65% of the class's total estimated damages); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) (citing "[s]everal noteworthy class action authorities" indicating "that the average securities fraud class action settles for between 3% and 15% of the damages suffered by the class"), L.T.

Bulan, L.E. Simmons, *Securities Class Action Settlements, 2020 Review and Analysis*, Cornerstone Research (2021), at 6 (stating that the median securities class action settlement in Rule 10b-5 cases in 2020 resulted in a recovery of 5.3% of estimated damages).[4]

Moreover, the $7 million recovery is a substantial benefit, as compared to the risk that a smaller recovery, or no recovery, would be achieved after a trial and appeals, possibly years in the future.  Indeed, if Defendants prevailed on their class-period argument and the class period began on May 31, 2017, the potentially recoverable damages for all claims would be limited to $12.4 million.  Moody Decl. ¶12.  The current settlement amount represents 56.5% of that amount, which is an exceptional result and vastly more than the median securities class action settlement.  *Id.*

In light of these considerations, the $7 million recovery provided by the Settlement constitutes an excellent result for injured Aqua Metals' investors.

### 3.   The Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To The Lead Plaintiff Or To Segments Of The Settlement Class

As further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval.  *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  In all respects, the terms embodied in the Stipulation are customary in nature.  In particular, Lead Plaintiff's recovery from the Settlement Fund will be determined according to precisely the same formula as the recoveries of other Settlement Class Members.  *See id.* (settlement may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives") (citation omitted).  The Settlement "does not improperly grant preferential treatment to [the Lead Plaintiff] or segments of the class."  *Portal Software*, 2007 WL

---

[4]   Available at   https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis.

1991529, at *5 (citation omitted); *see also Opperman v. Kong Techs. Inc.*, No. 13-cv-00453, 2017 U.S. Dist. LEXIS, at *18 (N.D. Cal. July 6, 2017) (the settlement "does not provide preferential treatment to any class member"). The Settlement creates a $7 million gross fund for the benefit of the entire Settlement Class. If Aqua Metals elects to provide the $500,000 in Aqua Metals common stock, the stock will be readily tradeable and Lead Plaintiff, through its counsel, intends to immediately liquidate the stock and distribute the proceeds to the Class along with the other $6.5 million. Moody Decl. ¶9. Lead Plaintiff's recovery from the Settlement Fund will be determined in accordance with the Plan of Allocation in the same manner as all other Settlement Class Members.

Further, there are no side agreements other than in regard to opt outs. Rule 23(e)(2)(C)(iv) requires that the parties identify any side agreements. The Parties have entered into a standard supplemental agreement that provides that if Class Members opt out of the Settlement such that the number opt outs equals or exceeds a certain threshold, Defendants shall have the option to terminate the Settlement. Stipulation ¶12.2. Agreements of this sort are typical in class settlements and, if requested, Lead Plaintiff can submit additional information regarding this agreement *in camera*. There are no other side agreements between the Parties.

Further, this is not a claims-made settlement and there will be no reversion to Defendants. *See* Stipulation ¶4.4.

**4.     The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

Lead Plaintiff, through Lead Counsel, has made a thorough investigation and analysis into the facts, legal issues, and circumstances relevant to the claims here. *See* Moody Decl. ¶5. Specifically, this includes, *inter alia*: (i) interviews with numerous former Aqua Metals' employees; (ii) extensive consultation with, and analysis by, a damages consultant; (iii) detailed reviews of Aqua Metals' public filings, annual reports, press releases and other publicly available information; (iv) review of analysts' reports and articles relating to Aqua Metals; (v) research of the applicable law with respect to the claims asserted in the two lengthy complaints filed in the

litigation and the potential defenses thereto; and (vi) legal research, briefing and analysis of the claims and defenses in connection with the opposition to two rounds of Defendants' motions to dismiss and the mediation. *Id.* Therefore, although the Settlement was reached relatively early in the litigation process as discovery had just begun, Lead Counsel have had an opportunity to thoroughly examine the issues and to examine the relative strengths and weaknesses of the claims and defenses. *See, e.g.*, *Vataj*, 2021 WL 1550478, at *1 (preliminarily approving settlement while case was still in the motion to dismiss briefing phase of the litigation).

In light of the above considerations, the proposed Settlement is, as a whole, fair, reasonable and within the range of possible approval. The Court should therefore grant preliminary approval of the Settlement and direct that Notice of it be given to the Settlement Class.

### B. Certification Of The Settlement Class Under Fed R. Civ. P. 23 Is Appropriate

For purposes of settlement, Lead Plaintiff seeks certification of the Settlement Class, consisting of all persons who purchased or otherwise acquired common stock or options to purchase common stock of Aqua Metals between May 19, 2016 and November 9, 2017, inclusive (the "Settlement Class Period"). The Class definition as set forth in the Amended Complaint includes only those who purchased or otherwise acquired Aqua Metals common stock, and does not include options. However, the addition of options to the Class definition is *de minimus*, as the volume of options traded are less than one percent of all the combined stock and option dollar trading volume during the Class Period. Notice at 20 n.7 (attached as Ex. A1 to the Preliminary Approval Order).

Further, the claims to be released encompass the claims in the Amended Complaint as well as additional claims alleged in the Consolidated Complaint that have been dismissed by the Court, and related Released Claims against Released Persons as defined in the Stipulation (and also described in the Notice and Claim Form). While the Released Claims include not only those claims that were asserted, but also those that could have been asserted, it limits such Released

Claims to those that both "(a) arise out of, are based upon, or relate to in any way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in this Action, or which could have been alleged in this action and (b) arise out of, are based upon, or relate to in any way to the purchase, acquisition, holding, sale, or disposition of any Aqua Metals securities during the Class Period." Stipulation ¶1.29.  Such releases are common in approved securities class action settlements.

In order for a class action to be certified, the following requirements must be met pursuant to Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Hanlon*, 150 F.3d at 1019.

### 1.    The Settlement Class is Sufficiently Numerous

To meet the numerosity requirement, the class representative need only demonstrate that it is difficult or inconvenient to join all members of the class, who may be geographically dispersed. *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 WL 8071391, at *2 (N.D. Cal. Dec. 20, 2006).  In this case, during the Settlement Class Period, millions of Aqua Metals' shares were traded on the NASDAQ.  Therefore, the Court may reasonably conclude that there are likely thousands of Settlement Class Members across the country.  The threshold for a presumption of impracticality of joinder is thus easily met. *Hanlon*, 150 F.3d at 1019.

### 2.    Common Questions Of Fact Or Law Exist

In order for a class to be certified, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality prerequisite has generally been liberally construed, requiring only a minimum of one issue common to all class members. *Hickey v. City of Seattle*, 236 F.R.D. 659, 665 (W.D. Wash. 2006).  The commonality requirement "has been construed permissively [and a]ll questions of fact and law need not be common to satisfy the

1    rule." *Hanlon*, 150 F.3d at 1019; *see also In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-

2    CV-182-BTM-RBB, 2020 WL 6381898, at *3 (S.D. Cal. Oct. 30, 2020).

3            This case presents numerous common questions of law and fact, including: (a) whether

4    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder

5    and whether the Individual Defendants also violated Sections 20(a) of the Exchange Act;

6    (b) whether Defendants acted with the requisite scienter; (c) whether Defendants' scheme

7    constituted a fraud on the market by artificially inflating the market price of Aqua Metals common

8    stock during the Settlement Class Period; and (d) whether the Settlement Class Members have

9    sustained damages and, if so, the proper measure of such damages.  *See, e.g.*, *Vataj*, 2021 WL

10   1550478, at *4.

11

12            **3.    Lead Plaintiff's Claims Are Typical Of Those Of The Settlement
                      Class**

13           The "typicality" prong has been met where "each class member's claim arises from the

14   same course of events, and each class member makes similar legal arguments to prove the

15   defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted),

16   *overruled on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005).  Typicality does not require

17   that the interests of the named representatives and the class members be substantially identical.

18   *Hanlon*, 150 F.3d at 1020.  Rather, so long as "the disputed issue of law or fact occup[ies]

19   essentially the same degree of centrality to the named plaintiff's claim as to that of other members

20   of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003)

21   (alteration in original) (citation omitted), "the typicality requirement is usually met irrespective

22   of minor variations in the fact patterns underlying individual claims," *Robidoux v. Celani*,

23   987 F.2d 931, 937 (2d Cir. 1993); *see also Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237

24   (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007); *Mild v. PPG Indus., Inc.*, No. 2:18-

25   CV-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) (claims need not be

26   identical).

27

28

1    Here, the claims of both the Lead Plaintiff and Settlement Class Members arise from the

2    same set of circumstances – *i.e.*, Defendants' alleged fraudulent conduct regarding Aqua Metals'

3    operations and the AquaRefining process.  Lead Plaintiff's claims are therefore predicated on the

4    same or similar legal theories as those of the other Settlement Class Members.  Further, the proof

5    that Lead Plaintiff would present to establish its claims would also prove the claims of the rest of

6    the Settlement Class.  The typicality prong has therefore been met.  *See, e.g.*, *Vataj*, 2021 WL

7    1550478, at *5.

8

9              **4.      Lead Plaintiff And Lead Counsel Will Fairly And Adequately**
                         **Represent The Interests Of The Settlement Class**

10    The adequacy requirement under Rule 23 "serves to uncover conflicts of interest between

11    named parties and the class they seek to represent."  *Amchem Prods. v. Windsor*, 521 U.S. 591,

12    625 (1997).  The factors to determine adequacy are: (a) the absence of potential conflicts between

13    the named plaintiff(s) and their counsel with other class members; and (b) counsel chosen by the

14    representative plaintiff(s) is qualified, experienced and able to vigorously conduct the litigation.

15    *Hanlon*, 150 F.3d at 1020.  *See also Carlin v. DairyAmerica, Inc*., 328 F.R.D. 393, 400 (E.D. Cal.

16    2018).

17    Lead Plaintiff purchased Aqua Metals common stock on the open market during the

18    Settlement Class Period and allegedly suffered significant losses as a result of the same course of

19    conduct that allegedly injured other Settlement Class Members.  Therefore, Lead Plaintiff's

20    interest in demonstrating Defendants' liability and maximizing possible recovery are aligned with

21    the interests of the absent class members.  *See, e.g., WorldCom*, 219 F.R.D. at 282 (finding that

22    "named plaintiffs' interests are directly aligned with those of the absent class members: they are

23    purchasers of WorldCom equity and debt securities who suffered significant losses as a result of

24    the investments").  Further, there is no evidence that Lead Plaintiff has interests antagonistic to

25    the interests of other Settlement Class Members.

26    As for the adequacy of class counsel, a court must consider the following: "(i) the work

27    counsel has done in identifying or investigating potential claims in the action; (ii) counsel's

28

experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).  A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, as the Court has previously concluded, Lead Counsel are highly experienced in litigating securities class actions and will fairly and adequately prosecute the claims of the Settlement Class.  *In re Aqua Metals Sec. Litig.*, No. 17-CV-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (appointing Berman Tabacco and Levi & Korsinsky, LLP as Lead Counsel and stating that the firms "have extensive experience as lead counsel in securities class actions."); *see also* Moody Decl. Exs. 3-4.  Lead Counsel have further demonstrated their adequacy by the substantial work undertaken in prosecuting this action, including: extensively investigating and drafting the complaints; defeating Defendants' first motion to dismiss; working with consultants; beginning discovery, engaging in mediation and negotiations and successfully reaching a favorable Settlement.

In view of these facts, Lead Plaintiff should be appointed "Class Representative," and Lead Counsel should be appointed "Class Counsel."

### 5.    The Requirements of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the requirements established by Rule 23(a), common questions of law or fact predominate over any individual questions, and a class action is superior to other means of adjudication. *Amchem*, 521 U.S. at 607.  This case easily meets the requirements of Rule 23(b)(3).

### a)    Common Legal And Factual Questions Predominate

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.  In this securities fraud case, Lead Plaintiff alleges the Defendants mislead investors and deliberately concealed problems concerning the testing, development, commercialization and operations of its AquaRefining

technology.  Whether, *inter alia*, Defendants engaged in a scheme to defraud, acted knowingly or with deliberate recklessness or caused damages to the Settlement Class predominate over any individual issues that might, in theory, exist.  *See Hanlon*, 150 F.3d at 1022 (Rule 23(b)(3) is satisfied where "[a] common nucleus of facts and potential legal remedies dominate[d the] litigation.").  *See also Portal Software*, 2007 WL 1991529, at *4-5; *Hale v. Manna Pro Prods., LLC*, No. 2:18-CV-00209-KJM-DB, 2020 WL 3642490, at *5 (E.D. Cal. July 6, 2020) (same).

> ### b)   A Class Action Is The Superior Means To Adjudicate The Claims Raised

The second prong of Rule 23(b)(3) is, for all intents and purposes, demonstrated by the proposed Settlement itself.  As the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."  521 U.S. at 620.  Any manageability problems that may have existed were this case to go to trial, are eliminated by settlement.  Given the unwieldy alternative – many small trials to adjudicate individual claims, which "would prove uneconomic for potential plaintiffs" and where "litigation costs would dwarf potential recovery" – resolution of this case on a class-wide basis is clearly preferable.  *See Hanlon*, 150 F.3d at 1023.

> ## C.   The Proposed Notice Plan Meets All Requirements

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice  (attached as Exhibit A-1 to the proposed Preliminary Approval Order).

The proposed form of Notice fully complies with the requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(7), and the Northern District of California's Procedural Guidance for Class Action Settlements.  The Notice apprises class members of the nature of the Action, the definition of the Settlement Class to be certified, the Class claims and issues, and the claims that will be released.  Additionally, the Notice: (1) describes the Settlement, Settlement amount and potential recovery both on an aggregate basis and an average per-share basis; (2) explains that the parties disagreed regarding whether any

damages were recoverable even if Lead Plaintiff prevailed on its claims and includes a brief description of why the parties are proposing the Settlement; (3) includes a brief description of the maximum amount of fees and expenses that Lead Counsel will seek; (4) describes the Plan of Allocation; (5) advises of the binding effect of a Judgment on Settlement Class Members under Rule 23(c)(3); (6) advises that a Settlement Class Member may enter an appearance through counsel if desired; (7) states that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so); (8) describes how to object to the proposed Settlement and/or requested attorneys' fees and Litigation Expenses and/or the request for an award to Lead Plaintiff for its costs and expenses and describes what these payments amount to on an average per share if approved, (9) describes how to make a Claim; (10) provides the names, addresses and telephone numbers of representatives of the Claims Administrator (including the settlement website) and Lead Counsel who will be available to answer questions from Settlement Class Members; (11) includes instructions on how to access the case docket via PACER or in person at the court; (12) states the date, time and location of the Final Approval Hearing and that the date may change without further notice to the Settlement Class and advises Settlement Class Members to check the settlement website or the Court's PACER site to confirm that the date has not been changed; and (13) includes the deadlines for submitting Claim Forms, opting out of the Settlement and for any objections to the Settlement, the Plan of Allocation or to Lead Counsel's requested attorney's fees and Litigation Expenses or the request for an award to Lead Plaintiff for its costs and expenses. These disclosures are thorough and should be approved.

Also, Summary Notice in the form attached as Exhibit A-3 to the proposed Preliminary Approval Order, will be published once in *Investor's Business Daily* and through a national newswire. Notice by mail and publication satisfy the requirements of due process and Rule 23. *See Portal Software*, 2007 WL 1991529, at *7. The Notice Plan also includes the maintenance of a case-specific settlement website with information and documents related to the case and the settlement. Walter Decl. ¶11; *See generally* Walter Decl. ¶4-11 (describing Notice Plan).

1

### D.     The Proposed Plan Of Allocation Should Be Preliminarily Approved

2        The Plan of Allocation, which was created with the assistance of a damages consultant,

3   warrants this Court's preliminary approval.   As more fully detailed in the Notice, the Plan of

4   Allocation assumes that the price of Aqua Metals common stock was artificially inflated

5   throughout the Settlement Class Period.   The computation of the estimated alleged artificial

6   inflation in the price of Aqua Metals common stock during the Settlement Class Period is based

7   on the fraudulent conduct alleged by Lead Plaintiff and the price change in the stock, net of

8   market- and industry-wide factors, in reaction to the public announcements issued on May 9,

9   2017, August 9, 2017, October 23, 2017 and November 9, 2017 that allegedly corrected the fraud

10  alleged by Lead Plaintiff.   The Plan of Allocation takes into account that the relevant news on

11  May 9, 2017, August 9, 2017 and November 9, 2017 was issued after the close of market and the

12  relevant news on October 23, 2017 was issued before the market opened and thus removed

13  artificial inflation from the price of Aqua Metals common stock on May 10, 2017, August 10,

14  2017, October 23, 2017 and November 10, 2017 (the "Corrective Disclosure Dates").   In order

15  for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, Aqua

16  Metals common stock must have been purchased or acquired during the Settlement Class Period

17  and held through at least one of these Corrective Disclosure Dates.

18       The Plan of Allocation provides specific formula for computing each Settlement Class

19  Member's "Recognized Loss" as described in the Notice.   Recognized Losses are calculated based

20  on whether a Settlement Class Member held common stock, call options or put options.   The

21  Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net

22  Settlement Fund based upon each Authorized Claimant's Recognized Loss.   No distribution will

23  be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

24       The Plan of Allocation fully comports with the criteria set forth in case law governing the

25  approval of such allocation.   It has a "reasonable" and "rational basis," makes intra-class

26  allocations based upon the "the timing of purchases and sales of the securities at issue," and was

27  formulated by Lead Plaintiff, Lead Counsel, and a damage consultant. *In re Charter Commc'ns.,*

28

*Inc.*,  No. MDL 1506, 4:02-CV-1186, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005).  In addition, nothing about the Settlement or Plan of Allocation gives preferential treatment to Lead Plaintiff.  Depending on the number of eligible shares purchased by investors who elect to participate in the Settlement and when those shares were purchased and sold, the average distribution is estimated to be $0.49 per damaged share purchased in the Settlement Class Period, before deduction of Court-approved fees and expenses.  *See* Moody Decl. ¶16.  The per share amount assumes all eligible Settlement Class Members submit valid and timely Claim Forms.  If fewer than all Settlement Class Members submit timely and valid Claim Forms, which is likely, the distributions per share will be higher.

Pursuant to the Stipulation, if any portion of the Net Settlement Fund remains following distribution pursuant to the Plan of Allocation and is of such an amount that in the discretion of Lead Counsel it is not cost effective or efficient to redistribute the amount to the Settlement Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to, subject to Court approval, Loyal University School of Law's Institute for Investor Protection (the "Institute for Investor Protection"), with which neither Lead Plaintiff nor Lead Counsel are affiliated.   The Institute for Investor Protection is a non-partisan, independent academic center that promotes investor protection for the individual consumer and the public and educates investors about the private remedies Congress and the judiciary envisioned would deter disclosure violations and make aggrieved investors whole. Both this Action and the Institute for Investor Protection focus on combatting securities fraud. *See Vataj*, 2021 WL 1550478, at *8 (preliminarily finding that there is a sufficient nexus between the University of San Francisco School of Law Investor Justice Clinic and the securities class action); *In re Biolase, Inc. Sec. Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *1 (C.D. Cal. Oct. 13, 2015) (approving Loyola University's Institute for Investor Protection as the *cy pres* recipient); *Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*, No. 12-cv-05259-JST, 2013 WL 6145706, at *7 (N.D. Cal. Nov. 21, 2013) ("An award to a legal services organization is often an appropriate use of *cy pres* funds.").

### E.   The Intended Request For Attorneys' Fees And Expenses And An Award For Costs And Expenses Of Lead Plaintiff

Lead Counsel intends to request an attorney fee award no greater than 25% of the settlement amount (approximately $1,750,000).  *See* Moody Decl. ¶14.  Lead Counsel's lodestar is approximately double that amount.  *Id.*  The fee request represents a significant negative multiplier of lodestar.  *Id.*  This requested fee amount is well within the normal range of such awards.  *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (the Ninth Circuit has "also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."); *See, e.g.*, *Vataj*, 2021 WL 1550478, at *8 (stating that "under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees award" and preliminarily approving settlement where lead counsel was seeking 25% of settlement fund in fees); *Opperman,* 2017 U.S. Dist. LEXIS 104507, at *20-21 (25% benchmark fees); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (establishing 25% benchmark); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1035 (8th Cir. 2002) (affirming attorney fee award of 36% of settlement amount); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 766 (S.D.W. Va. 2009) (finding that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee); *Helmick v. Columbia Gas Transmission*, C.A. No. 2:07-cv-00743, 2010 WL 2671506, at *5 (S.D.W. Va. July 1, 2010) (finding a 33 1/3 % fee reasonable).

Lead Counsel also intends to request reimbursement of its costs and expenses not to exceed $135,000, which expenses include, *inter alia*, damages consultant, mediation costs, and legal research.  *See* Moody Decl. ¶14.

Further, Lead Plaintiff, which consists of Plymouth County Retirement Association, Denis Taillefer and his private company, 1103371 Ontario Ltd, intends to seek an award not to exceed $5,000 in total for its costs and expenses.  *See* Moody Decl. ¶14.  The PSLRA, allows for "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Among the tasks Lead Plaintiff has performed in executing its duties and

responsibilities in this Action include: (a) reviewing the complaints, briefing, discovery and mediations submissions; (b) communicating with Lead Counsel via email and telephone about case developments and litigation strategy; (c) attending the lead plaintiff hearing; (d) attending the mediation and evaluating the offers and counteroffers over several months of negotiations; (e) evaluating the Settlement Amount, conferring with Lead Counsel and ultimately approving the Settlement.   Moody Decl. ¶15.   Similar Lead Plaintiff awards have been found to be presumptively reasonable in this judicial district.  *See, e.g.*, *Camberis v. Ocwen Loan Serv. LLC*, No. 14-cv-02970-EMC, 2015 WL 7995534, at *4 (N.D. Cal. Dec. 7, 2015) (granting request for $7,500, or $3,750 to each named plaintiff); *Vataj*, 2021 WL 1550478, at *3, 12 (granting preliminary approval of settlement where Lead Plaintiffs intended to seek a $15,000 award); *see also Hendricks v. Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *14 (N.D. Cal. Sept. 29, 2016) (granting request for $5,000), *aff'd sub nom*. *Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018); *Austin v. Foodliner, Inc*., No. 16-CV-07185-HSG, 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019) (granting $10,000 for lead plaintiff, $5,000 each for other named plaintiffs); *Fowler v. Wells Fargo Bank, N.A*., No. 17-CV-02092-HSG, 2019 WL 330910, at *8 (N.D. Cal. Jan. 25, 2019) (granting request for $7,500 for lead plaintiff's contributions and $5,000 for other named plaintiff); *Bisaccia v. Revel Sys. Inc*., No. 17-CV-02533-HSG, 2019 WL 3220275, at *9-10 (N.D. Cal. July 17, 2019) (granting $5,000 request).

These payments, in total, if approved, will come out of the $7 million Settlement Fund, and are estimated to be an average of $0.13 per damaged share purchased in the Settlement Class Period.  Moody Decl. ¶14.

## F.     The Claims Administrator

Lead Plaintiff also requests that the Court approve the appointment of A.B. Data Ltd. ("A.B. Data") as Claims Administrator.  A.B. Data has extensive relevant experience and is a nationally recognized notice and claims administration firm and was selected after receiving proposals from three administrators.  Walter Decl. ¶¶2, 3 & Ex. A; Moody Decl. ¶17.  A.B. Data staff consists of experienced certified public accountants, information technology specialists and

various other professionals with substantial experience in notice and claims administration.  A.B. Data has experience with class action settlements in this Circuit and further presented the most economical and effective notice and administration program of the bids Lead Plaintiff received. Moody Decl. ¶17.  In the past two years, Berman Tabacco has engaged a total of three (3) times, and Levi & Korsinsky, LLP has engaged A.B. Data five (5) times.   Walter Decl. ¶15.

A.B. Data estimates that it will cost approximately $120,000 to administer the settlement of this case, based upon the dissemination of approximately 25,000 Notice Packets and the submission of 5,000 claim forms, approximately 60% of which it anticipates will be valid and eligible for payment.  *See* Walter Decl. ¶13, 14, 16; *see also* Moody Decl. Ex. 2.  A.B. Data's expectations are based on publicly available trading history during the Class Period for Aqua Metals as well as A.B. Data's collective experience in administering securities class actions settlements.   Walter Decl. ¶¶13-16; *see also* Moody Decl. Ex. 2.

This amount is reasonable in relation to the value of the settlement as it reflects approximately 1.7% of the total Settlement.  Walter Decl. ¶16.

### G.    Schedule For Final Approval

Lead Plaintiff respectfully proposes the below schedule for Settlement-related events.  As set forth in the Preliminary Approval Order, the timing of events is determined by the date the Preliminary Approval Order is entered and the date the Final Approval Hearing is scheduled— which Lead Plaintiff requests be at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| EVENT | PROPOSED TIMING |
|---|---|
| Deadline for mailing Notice and Claim Form (proposed Preliminary Approval Order ¶8(a)) | 10 business days after Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Notice (proposed Preliminary Approval Order ¶8(b)) | No later than the Notice Date |
| Deadline for filing papers supporting final approval of Settlement, Plan of Allocation, attorney fee & expense motion and request for reimbursement of cost and expenses of Lead Plaintiff (proposed Preliminary Approval Order ¶18) | 73 calendar days before Final Approval Hearing<br><br>(This date is 45 days before the post-mark deadlines for (i) requests for exclusion and (ii) objections.) |

| EVENT | PROPOSED TIMING |
|-------|-----------------|
| Deadline for submitting Claim Forms (proposed Preliminary Approval Order ¶12) | 90 calendar days after Notice Date |
| Deadline for exclusion requests or objections (proposed Preliminary Approval Order ¶¶14-15) | 28 calendar days before Final Approval Hearing<br><br>(This date is 45 days after the filing of (i) final approval motion, (ii) attorney fee & expense motion and (iii) request for reimbursement of cost and expenses of Lead Plaintiff.) |
| Deadline for filing reply papers (proposed Preliminary Approval Order ¶18) | 14 calendar days before Final Approval Hearing |
| Final Approval Hearing (proposed Preliminary Approval Order ¶6) | At least 120 days after the issuance of the Preliminary Approval Order |

## IV.   <u>CONCLUSION</u>

Accordingly, based on the Stipulation, the attachments to the Stipulation, this memorandum of law and the prior proceedings in this matter, Lead Plaintiff, with the consent of Defendants, respectfully request that the Court grant the Motion and enter the proposed Preliminary Approval Order submitted herewith.

DATED:  July 2, 2021                          Respectfully submitted,

**BERMAN TABACCO**

By:   */s/ Kristin J. Moody*
          Kristin J. Moody

Nicole Lavallee
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:  nlavallee@bermantabacco.com
           kmoody@bermantabacco.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shannon L. Hopkins
Stephanie A. Bartone
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
Email: shopkins@zlk.com
        sbartone@zlk.com

*Counsel for the Lead Plaintiff Plymouth County
Group and Co-Lead Counsel for the Class*