UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARLIS HAMPTON, et al.,

Plaintiffs,

v.

AQUA METALS, INC., et al.,

Defendants.

Case No. 17-cv-07142-HSG

**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

Re: Dkt. No. 165

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Lead Plaintiff the Plymouth County Group (consisting of Plymouth County Retirement Association, Denis Taillefer and his private company, 1103371 Ontario Ltd.) ("Lead Plaintiff"). Dkt. No. 165 ("Mot."). The parties have reached a settlement regarding Plaintiffs' claims and now seek preliminary court approval. On September 30, 2021, the Court held a hearing on Lead Plaintiff's motion for preliminary approval. For the reasons set forth below, the Court **GRANTS** Lead Plaintiff's motion for preliminary approval of class action settlement.

I.     **BACKGROUND**

A.     **Factual and Procedural Background**

On March 29, 2018, the Court consolidated three related class actions then pending in the Northern District of California into one class action lawsuit entitled *In re Aqua Metals, Inc. Securities Litigation*, No. 4:17-cv-07142. Dkt. No. 50. On May 23, 2018, the Court appointed the Plymouth County Group as Lead Plaintiff for the Class and approved Lead Plaintiff's choice of the law firms of Berman Tabacco and Levi & Korsinsky, LLP as Lead Counsel in the class action. Dkt. No. 57. Lead Plaintiff then filed a Consolidated Complaint for Violations of Securities Laws alleging claims under the Securities and Exchange Act of 1934 ("Exchange Act") and the

United States District Court
Northern District of California

United States District Court
Northern District of California

Securities Act of 1933 ("Securities Act") on July 20, 2018.  Dkt. No. 83.  Specifically, the

Consolidated Complaint asserted the following claims on behalf of investors who purchased or

otherwise acquired Aqua Metals common stock between May 19, 2016 and November 9, 2017:

1.  Exchange Act Count I, alleging violations of Section 10(b) of the Exchange Act
    and Rule 10b-5(b) ("Misrepresentation Claim") by Aqua Metals, Inc. ("Aqua
    Metals") and Stephen R. Clarke, Thomas Murphy, and Selwyn Mould ("Individual
    Defendants");

2.  Exchange Act Count II, alleging violations of Section 10(b) of the Exchange Act
    and Rule 10b-5(a) & (c) ("Scheme Liability Claim") by Aqua Metals and the
    Individual Defendants;

3.  Exchange Act Count III, alleging violations of Section 20(a) of the Exchange Act
    ("Control Person Liability Claim") by the Individual Defendants;

4.  Securities Act Count I, alleging violations of Section 11 of the Securities Act by
    Aqua Metals and Defendants Clarke and Murphy; and

5.   Securities Act Count II, alleging violations of Section 15 of the Securities Act by
    the Individual Defendants.

On September 18, 2018, Defendants moved to dismiss the Consolidated Complaint.  Dkt.

No. 93.  On August 14, 2019, the Court granted in part and denied in part

Defendants' motion to dismiss, denying Defendants' motion to dismiss as to the Section 10(b),

Rule 10b-5(a) and (c) Scheme Liability Claim and Section 20(a) Control Person Liability Claim,

while granting Defendants' motion to dismiss as to the Section 10(b), Rule 10b-5(b)

Misrepresentation Claim, Section 11 Claim, and Section 15 Claim with leave to amend.  Dkt. No.

113.

On September 20, 2019, Lead Plaintiff filed the Amended Consolidated Complaint for

Violation of Securities Laws ("Amended Complaint"), which is the operative complaint in this

Action.  Dkt. No. 119 (or "SAC").  The Amended Complaint asserts only Exchange Act claims

against Aqua Metals and the Individual Defendants.  *Id.*  The Amended Complaint generally

alleges that Defendants artificially inflated Aqua Metals' stock price by misleading investors about

2

its AquaRefining lead recycling technology. *See generally id.* The Amended Complaint further alleges that, when the truth regarding the AquaRefining technology was revealed, Aqua Metals' stock price plummeted through a series of one-day drops, which caused Lead Plaintiff and the Class to suffer significant damages. *See id.* ¶ 19. On November 1, 2019, Defendants filed a motion to dismiss the Amended Complaint's Section 10(b), Rule 10b-5(b) Misrepresentation Claim and the Section 20(a) Control Person Liability Claim as it relates to Count One of the Amended Complaint. *See* Dkt. Nos. 128-29. On November 16, 2020, the Court granted Defendants' Motion to Dismiss and dismissed the Section 10(b), Rule10b–5(a) and (c) scheme liability claim and Section 20(a) control person liability claim as it relates to Count One of the Amended Complaint. *See* Dkt. No. 141.

On December 9, 2020, the parties participated in a mediation session but did not reach a resolution. *See* Dkt. No. 166, Declaration of Kristin J. Moody ("Moody Decl.") ¶ 6. The parties then attended case management conferences on February 9, 2021, and March 16, 2021, and jointly proposed a litigation schedule for the case through trial. *See* Dkt. Nos. 150, 153. On April 6, 2021, Defendants answered the Amended Complaint. Dkt. No. 158. On July 7, Lead Plaintiff then filed a motion for preliminary approval of a proposed settlement agreement. Dkt. No. 165.

### B.   Settlement Agreement

Following formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement on July 2, 2021. Dkt. No. 166-1 ("SA"). The key terms are as follows:

Class Definition: The Settlement Class is defined as: "All persons and entities who purchased or otherwise acquired common stock or options to purchase common stock of Aqua Metals between May 19, 2016 and November 9, 2017, inclusive, and were damaged as a result."[12]

---

[1] Under the proposed Settlement Agreement, excluded from the Settlement Class will be (a) Defendants; (b) members of the immediate family of each of the Defendants; (c) Defendants' subsidiaries and affiliates; (d) any person who is an officer, director or controlling person of Aqua Metals; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers, and any of their affiliates or subsidiaries; and (g) the legal representatives, heirs, successors or assigns of any such excluded party. All persons who submit valid and timely requests for exclusions from the Class will also be excluded. SA ¶ 1.35.
[2] The Class definition in the Settlement Agreement is different from the one in the Amended Complaint. The Class definition in the Amended Complaint includes only those who purchased or otherwise acquired Aqua Metals common stock, and does not include options. *See* SAC at 1.

United States District Court
Northern District of California

SA ¶ 1.35.

Settlement Benefits: Aqua Metals, on behalf of all Defendants, will make a $7 million non-reversionary payment into a "Settlement Fund." *Id.* ¶ 4.1.  The $7 million payment will consist of $6.5 million in cash to be funded by Aqua Metals' D&O insurance carriers and $500,000 in either Aqua Metals common stock or cash, at Aqua Metals' sole option. *Id.* After deduction of taxes, administration costs, litigation expenses, attorneys' fees, and any incentive award to Lead Plaintiff for its costs and expenses, the balance (the "Net Settlement Fund") will be distributed to the Settlement Class Members under the Plan of Allocation. *Id.* ¶ 5.2.

According to the Plan of Allocation, a third-party settlement administrator will determine each authorized claimant's share of the Net Settlement Fund based upon the recognized loss formula ("Recognized Loss"). *See id.,* Ex. A-1 at 14.  A Recognized Loss will be calculated for each share of Aqua Metals common stock and each exchange traded call option on Aqua Metals common stock purchased or otherwise acquired during the Settlement Period. *See id.,* Ex. A-1 at 14-15.  Each authorized claimant's Recognized Loss calculation depends on several factors, including when they purchased or otherwise acquired Aqua Metals securities during the Settlement Class Period and in what amounts, and whether such securities were sold and, if sold, when and for what amounts. *See id.,* Ex. A-1 at 15-19.  Depending on the number of eligible shares purchased by investors who elect to participate in the settlement and when those shares were purchased and sold, the average distribution is estimated to be $0.49 per damaged share purchased in the Settlement Class Period, before deduction of Court-approved fees and expenses.[3] *See id.,* Ex. A-1 at 1.

*Cy Pres* Distribution: If any portion of the Net Settlement Fund remains following distribution under the Plan of Allocation and is of such an amount that, in the discretion of Lead

Lead Plaintiff claims that the Settlement Agreement's addition of options to the Class definition is "de minimus" because "the volume of options traded are less than one percent of all the combined stock and option dollar trading volume during the Class Period."  *See* Mot. at 13.

[3] The per-share amount assumes all eligible Settlement Class Members submit a valid and timely Proof of Claim and Release form.  If fewer than all Settlement Class Members submit timely and valid Claim Forms, which the parties contend is likely, the distribution per share will be higher. *See id.,* Ex. A-1 at 1.

United States District Court
Northern District of California

1   Counsel, is not cost effective or efficient to redistribute to the Settlement Class, then such

2   remaining funds, after payment of any further notice and administration costs and taxes, will be

3   donated to a nonprofit charitable organization unaffiliated with Defendants, Lead Plaintiff, or Lead

4   Counsel, selected by Lead Plaintiff and subject to Court approval.  SA ¶ 4.4.

5        Release:  Under the Settlement Agreement, all class members will release their "Released

6   Claims" against the "Defendant Releasees."  *Id.* ¶ 3.2.  "Plaintiffs' Released Claims" are defined

7   as follows:

> [A]ny and all claims, demands, losses, rights, and causes of action, of
> any nature whatsoever, whether known or unknown, that have been
> or could have been asserted in this Action or could in the future be
> asserted in any forum, whether foreign or domestic, whether arising
> under federal, state, common, or foreign law, by Lead Plaintiff, any
> member of the Settlement Class, or their successors, assigns,
> executors, administrators, representatives, attorneys, and agents, in
> their capacities as such, whether brought directly or indirectly against
> any of the Defendants, which (a) arise out of, are based upon, or relate
> to in any way any of the allegations, acts, transactions, facts, events,
> matters, occurrences, representations or omissions involved, set forth.
> alleged or referred to, in this Action, or which could have been alleged
> in this action, and (b) arise out of, are based upon, or relate to in any
> way to the purchase, acquisition, holding, sale, or disposition of any
> Aqua Metals securities during the Class Period. The Settlement shall
> include a waiver of Lead Plaintiff's and Settlement Class Members'
> rights under California Civil Code §1542 or similar laws.
> Notwithstanding the foregoing, "Plaintiffs' Released Claims" do not
> include: (i) claims relating to the enforcement of the Settlement; or
> (ii) claims asserted on behalf of Aqua Metals in any derivative action
> based on similar allegations, including but not limited to claims in *In
> re Aqua Metals, Inc. Stockholder Derivative Litigation*, Master File
> No. 1:18-cv-00201 (D. Del. 2018) (collectively, "Excluded Plaintiffs'
> Claims").

*Id.* ¶ 1.29.  The "Defendant Releasees," in turn, are Defendants and all their present and former

parents, subsidiaries, divisions, affiliates, present and former employees, officers and directors,

present and former attorneys, accountants, insurers, and agents, and predecessors, heirs,

successors, and assigns.  *Id.* ¶ 1.10.

        Class Notice:  Under the Settlement Agreement, a third-party settlement administrator (or

"Claims Administrator") will mail notice of the class action settlement and a claim form to all

class members who can be identified with reasonable effort.  *Id.* ¶ 8.2.  To help identify the class

members, Aqua Metals will provide the Claims Administrator with its common stockholder lists

United States District Court
Northern District of California

(consisting of common stockholder names and addresses during the Settlement Class Period), in electronic form.  *Id.*  The Claims Administrator will also publish notice in *Investor's Business Daily* and a national wire service, and maintain a toll-free telephone number (877-777-9255) and a case-specific website (www.AquaMetalsSecuritiesLitigation.com) to address Settlement Class Member inquiries.  *See* Dkt. No. 167, Declaration of Adam D. Walter ("Walter Decl.") ¶ 10-11.  The Claims Administrator estimates disseminating approximately 25,000 "Notice Packets" to potential Settlement Class Members.  *See id.* at 13.

Opt-Out Procedure: Settlement Class Members can opt out of the Settlement Class by submitting a valid and timely request to the Claims Administrator in the manner described in the Notice.  SA ¶ 9.1.  Any member of the Settlement Class who does not submit a timely written request for exclusion will be bound by the terms of the Settlement Agreement or any final judgment.  *Id.* ¶ 9.2.  Conversely, all persons who submit valid and timely requests for exclusion will have no rights under the Settlement Agreement, will not share in the distribution of the Net Settlement Fund, and will not be bound by the Settlement Agreement or any final judgment.  *Id.*  Under the Settlement Agreement, the deadline for submitting requests for exclusion will be no later than twenty-eight (28) calendar days prior to the Final Approval Hearing, or as the Court may otherwise direct.  *Id.*  The Settlement Agreement also states that exclusion requests may not be submitted by email, unless otherwise ordered by the Court.  *Id.*

Incentive Award: The Settlement Agreement states that Lead Counsel may seek an award to pay the costs and expenses of Lead Plaintiff in connection with the prosecution of this Action.  *Id.* ¶ 7.1.  In Lead Counsel's declaration, they state that Lead Plaintiff intends to seek an award not to exceed $5,000 in total for its costs and expenses related to this litigation.  *See* Moody Decl. ¶ 14.

Attorneys' Fees and Costs:  The Settlement Agreement states that Lead Counsel will apply to the Court for an award of attorneys' fees to Lead Counsel and for reimbursement of litigation expenses.  SA ¶ 7.1.  In Lead Counsel's declaration, they state that they intend to request an attorney fee award no greater than 25% of the settlement amount, which is approximately $1,750,000.  *See* Moody Decl. ¶ 14.  They also state that they intend to request reimbursement of

costs and expenses not to exceed $135,000, which includes, among other things, damages

consultant expenses, mediation expenses, and legal research costs. *Id.*

### C.    Supplemental Agreement

The Settlement Agreement also references a confidential "Supplemental Agreement"

between Lead Plaintiff and Defendants that was not filed with the Court. *See* S.A. ¶ 12.2.  The

Supplemental Agreement details the conditions under which Defendants may terminate the

settlement if the requests for exclusion from the settlement class exceed a certain level. *Id.*  The

parties contend that "[a]greements of this sort are typical in class Settlements" and offered to

submit to the Court *in camera* any additional information regarding the Supplemental Agreement.

*See* Mot. at 12.  The parties submitted the Supplemental Agreement for the Court's *in camera*

review on September 30, 2021.

## II.    PROVISIONAL CLASS CERTIFICATION

### A.    Legal Standard

The plaintiff bears the burden of showing by a preponderance of the evidence that class

certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  First, a plaintiff

must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality,

typicality, and adequacy of representation. *Id.* at 349.  Second, it must establish that at least one of

the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a

class under Rule 23(b)(3), it must show that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and

settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)

("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider

manageability at trial. *Id.*  However, this concern is not present in certifying a settlement class.

*Id.* at 556–57.  In deciding whether to certify a settlement class, a district court "must give

7

United States District Court
Northern District of California

1  heightened attention to the definition of the class or subclasses."  *Id*. at 557.

2      **B.**    **Analysis**

3          To determine whether provisional certification is appropriate, the Court considers whether

4  the requirements of Rule 23(a) and Rule 23(b)(3) have been met.  As discussed in more detail

5  below, the Court finds that they have.

6          **i.**    **Rule 23(a) Certification**

7              **a.**    **Numerosity**

8          Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members

9  is impracticable."  The Court finds that numerosity is satisfied here because joinder of the

10 thousands of estimated class members would be impracticable.  The exact class size cannot be

11 definitively known because most class members likely held their securities through a broker, bank,

12 or other financial institution.  However, the Claims Administrator has considered Aqua Metals,

13 Inc. trading history during the relevant period, including information regarding the volume of

14 shares traded during the Settlement Class Period, and estimates disseminating approximately

15 25,000 Notice Packets to potential Settlement Class Members.  *See* Walter Decl. at  ¶ 13.  In light

16 of this estimate, the Court concludes that the number of class members makes joinder

17 impracticable.

18             **b.**    **Commonality**

19         Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  A

20 contention is sufficiently common where "it is capable of classwide resolution—which means that

21 determination of its truth or falsity will resolve an issue that is central to the validity of each one of

22 the claims in one stroke."  *Dukes*, 564 U.S at 350.  Commonality exists where "the circumstances

23 of each particular class member vary but retain a common core of factual or legal issues with the

24 rest of the class."  *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).  "What matters to

25 class certification . . . is not the raising of common 'questions' — even in droves — but rather the

26 capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the

27 litigation."  *Dukes*, 564 U.S at 350.  Even a single common question is sufficient to meet this

28 requirement.  *Id.* at 359.

United States District Court
Northern District of California

1    There are several common questions of law and fact in this case, including whether

2    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 and whether the Individual

3    Defendants also violated Sections 20(a) of the Exchange Act; whether Defendants acted with

4    scienter; and whether Defendants' alleged scheme constituted a fraud on the market by artificially

5    inflating the market price of Aqua Metals common stock during the Settlement Class Period.  *See,*

6    *e.g.*, SAC ¶¶ 121, 329, 336, 350, 356, 529, 537, 546.  Although the amount of damages which

7    each class member may be entitled to recover will differ, the issues described above are common

8    to the proposed Settlement Class.  Accordingly, the Court finds that the commonality requirement

9    is met.

### c.  Typicality

11    Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

12    of the claims or defenses of the class."  "The test of typicality is whether other members have the

13    same or similar injury, whether the action is based on conduct which is not unique to the named

14    plaintiffs, and whether other class members have been injured by the same course of conduct."

15    *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted).  That said,

16    under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical."

17    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

18    Here, the Court finds that Lead Plaintiff's claims are both factually and legally similar to

19    those of the putative class.  Lead Plaintiff alleges that both it and other class members acquired

20    Aqua Metals' securities at artificially high prices because they all relied on Defendants' false and

21    materially misleading statements and omissions during the Class Period.  *See, e.g.*, SAC ¶¶ 540-

22    43.  This similarity satisfies the typicality requirement.

### d.  Adequacy

24    Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent

25    the interests of the class."  The Court must address two legal questions: (1) whether the named

26    Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether

27    the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.

28    *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  This inquiry "tend[s] to

United States District Court
Northern District of California

1  merge" with the commonality and typicality criteria.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

2  147, 158 n.13 (1982).  In part, these requirements determine whether "the named plaintiff's claim

3  and the class claims are so interrelated that the interests of the class members will be fairly and

4  adequately protected in their absence."  *Id*

5        The Court is unaware of any actual conflicts of interest in this matter and no evidence in

6  the record suggests that either Lead Plaintiff or Lead Counsel have a conflict with other class

7  members.  As the Court has previously recognized, Lead Counsel have been appointed class

8  counsel in numerous federal and state class actions, and have extensive experience as lead counsel

9  in securities class actions.  *See* Dkt. No. 57; *see also* Moody Decl. Exs. 3-4.  The Court finds that

10  Lead Counsel and Lead Plaintiff have prosecuted this action vigorously on behalf of the class to

11  date and will continue to do so.  The adequacy of representation requirement is therefore satisfied.

### ii.  Rule 23(b)(3) Certification

13        To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3).  First,

14  "questions of law or fact common to class members [must] predominate over any questions

15  affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  And second, "a class action [must

16  be] superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.*

### a.  Predominance

18        The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

19  warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

20  (2016) (quotations omitted).  The Supreme Court has defined an individualized question as one

21  where "members of a proposed class will need to present evidence that varies from member to

22  member."  *Id.* (quotations omitted).  A common question, on the other hand, is one where "the

23  same evidence will suffice for each member to make a prima facie showing [or] the issue is

24  susceptible to generalized, class-wide proof."  *Id.* (quotations omitted).

25        Here, the Court concludes that, for purposes of settlement, common questions raised by

26  Lead Plaintiff's claims predominate over questions affecting only individual members of the

27  proposed class.  Lead Plaintiff alleges that both it and other class members acquired Aqua Metals

28  securities at artificially high prices because they all relied on Defendants' false and materially

1   misleading statements and omissions during the Class Period.  *See, e.g.*, SAC ¶¶ 540-43.  The

2   Court finds that whether Defendants engaged in a scheme to defraud, acted knowingly or with

3   deliberate recklessness, and caused damages to the Settlement Class are all questions susceptible

4   to generalized, class-wide proof.  And although Class Members will need to rely upon individual

5   evidence to some extent to calculate their individual damages, the "mere fact that there might be

6   differences in damage calculations is not sufficient to defeat class certification."  *Hyundai II*, 926

7   F.3d at 560 (quotations omitted).  Therefore, the Court finds the predominance requirement is met

8   for purposes of provisional class certification.

9                       **b.  Superiority**

10          The superiority requirement tests whether "a class action is superior to other available

11  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The

12  Court considers four non-exclusive factors:  (1) the interest of each class member in individually

13  controlling the prosecution or defense of separate actions; (2) the extent and nature of any

14  litigation concerning the controversy already commenced by or against the class; (3) the

15  desirability of concentrating the litigation of the claims in the particular forum; and (4) the

16  difficulties likely to be encountered in the management of a class action.  *Id.*

17          The Court concludes that a class action enables the most efficient use of Court and attorney

18  resources and reduces costs to the class members by allocating costs among them.  Further, this

19  forum is appropriate, and there are no obvious difficulties in managing this class action.

20          The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are

21  met.

22          **iii.     Class Representative and Class Counsel**

23          Because the Court finds that Lead Plaintiff meets the commonality, typicality, and

24  adequacy requirements of Rule 23(a), the Court appoints the Lead Plaintiff as class representative.

25  When a court certifies a class, it must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).

26  Factors that courts must consider when making that decision include:

27                  (i) the work counsel has done in identifying or investigating potential
                    claims in the action;
28                  (ii) counsel's experience in handling class actions, other complex

United States District Court
Northern District of California

litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Lead Counsel have efficiently investigated and litigated this case. As the Court explained in the order appointing the law firms Berman Tabacco and Levi & Korsinsky to serve as co-lead counsel, both firms have extensive experience as lead counsel in securities class actions. *See* Dkt. No. 57; *see also* Moody Decl. Exs. 3-4. Accordingly, the Court appoints the law firms of Berman Tabacco and Levi & Korsinsky as Class Counsel.

## III.    PRELIMINARY SETTLEMENT APPROVAL

### A.    Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (citations and quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed

12

United States District Court
Northern District of California

settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies.  *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).  Courts lack the authority, however, to "delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### B.   Analysis

#### i.   Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest.  *See Roes*, 944 F.3d at 1049.  The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant.  *Id.*

##### a.   Attorneys' Fees

As discussed above, the proposed settlement is non-reversionary with all unclaimed funds awarded to a *cy pres* recipient.  *See* SA ¶ 4.4.  It also does not contain a clear sailing provision and is not conditioned on any award of attorneys' fees or expenses.  *See id.* ¶ 7.4.  Moreover, any attorneys' fees will be paid from the Settlement Fund itself.  *See id.* ¶ 7.2.

Lead Counsel intends to request an attorneys' fee award no greater than 25% of the settlement amount (approximately $1,750,000) and reimbursement of its costs and expenses not to exceed $135,000.  *See* Moody Decl. at 14.  When deciding to award attorneys' fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees award.  *See, e.g., In re Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate

1    explanation in the record of any 'special circumstances' justifying a departure.").

2           The Court recognizes that Lead Counsel obtained significant results for the prospective

3    class members, as discussed below in Section III.B.iii.  Further, the agreement does not

4    contemplate a disproportionate cash allocation between counsel and the class.  *Cf. Roes*, 944 F.3d

5    at 1051 ("Here, more of the available $2 million in settlement cash ultimately went to attorneys'

6    fees ($950,000) than would be distributed to class members ($864,115).").  Even if the Court were

7    to award 25% in attorneys' fees, the majority of the monetary settlement would still be distributed

8    to class members.  The Court is cognizant of its obligation to closely review class fee awards and

9    at the final approval stage will scrutinize the record to determine what attorneys' fees award is

10   appropriate in this case.  Accordingly, given that Counsel will not request a disproportionate

11   amount of the settlement agreement and that the settlement is non-reversionary, the Court finds

12   that this factor does not weigh against preliminary approval.

### b.  *Cy Pres* Distribution

14          The Court must also evaluate whether the proposed *cy pres* recipient is appropriate.

15   A *cy pres* award must qualify as "the next best distribution" to giving the funds to class

16   members.  *Dennis*, 697 F.3d at 865.  "Not just any worthy recipient can qualify as an

17   appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class

18   and the *cy pres* beneficiaries."  *Id.* (quotation omitted).  That is to say, a *cy pres* award must be

19   "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class

20   members, and must not benefit a group too remote from the plaintiff class."  *Id.* (quotation

21   omitted).  A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any

22   class member would benefit from it."  *Id.* (quotation omitted).

23          Here, the parties intend to select the Loyola University School of Law's Institute for

24   Investor Protection as its *cy pres* recipient.  *See* SA ¶ 4.4; Mot. at 21.  As the parties explain, the

25   Institute for Investor Protection is a non-partisan, independent academic center that promotes

26   investor protection for the individual consumer and the public and educates investors about the

27   private remedies that Congress and the judiciary envisioned would deter disclosure violations and

28   make aggrieved investors whole.  *See* Mot. at 21.  The Court agrees with Lead Plaintiff that

United States District Court
Northern District of California

1    "[b]oth this Action and the Institute for Investor Protection focus on combatting securities fraud."

2    *Id.*  Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres*

3    recipient and the Settlement Class.

### ii.    Preferential Treatment

5           The Court next considers whether the settlement agreement provides preferential treatment

6    to any class member.  The Ninth Circuit has instructed that district courts must be "particularly

7    vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to

8    infect negotiations."  *In re Bluetooth*, 654 F.3d at 947.  For that reason, courts in this district have

9    consistently stated that preliminary approval of a class action settlement is inappropriate where the

10   proposed agreement "improperly grant[s] preferential treatment to class representatives."  *Lenovo*,

11   2018 WL 6099948, at *8 (quotations omitted).

12          Although Lead Plaintiff intends to seek an award not to exceed $5,000 in total for its costs

13   and expenses related to this litigation, the Court ultimately will determine whether Lead Plaintiff

14   is entitled to such an award and the reasonableness of the amount requested.  Incentive awards

15   "are intended to compensate class representatives for work done on behalf of the class, to make up

16   for financial or reputational risk undertaken in bringing the action."  *Rodriguez v. West Publ'g*

17   *Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Plaintiffs must provide sufficient evidence to allow

18   the Court to evaluate their award "individually, using 'relevant factors includ[ing] the actions the

19   plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted

20   from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the

21   litigation . . . .'"  *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The Court will

22   consider the evidence presented at the final fairness hearing and evaluate the reasonableness of

23   any incentive award request.  Nevertheless, because incentive awards are not per se unreasonable,

24   the Court finds that this factor weighs in favor of preliminary approval.  *See Rodriguez*, 563 F.3d

25   at 958.

26

27

28

United States District Court
Northern District of California

### iii.    Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8.  This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the total value of the settlement offer is $7 million, consisting of $6.5 million in cash to be funded by Aqua Metals' D&O insurance carriers and $500,000 in either Aqua Metals common stock or cash, at Aqua Metals' sole option.  SA ¶ 4.1.  Lead Plaintiff contends that this settlement offer constitutes 7.32% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants.  *See* Moody Decl. ¶ 12.  The Court agrees with Lead Plaintiff that this recovery is in line with comparable class action settlements.  *See, e.g.*, *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-0483, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement fund amount of 4.63 to 7.65% of the class's total estimated damages); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 2077847, at *2 n.2. (N.D. Cal. May 10, 2019) (noting that "the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions").  Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

Lead Plaintiff has also explained the risks they would face in continuing to litigate this case.  For example, Lead Plaintiff notes that Defendants dispute the extent to which Aqua Metals' stock price decline was attributable to the alleged fraud, as opposed to other company-specific bad news.  *See* Moody Decl. ¶ 10.  And Lead Plaintiff also explains that Defendants' position as to when the class period should begin could "severely limit" the amount of damages Plaintiffs would be able to recover, if the Court were to agree.  *See id.*  ¶¶ 10-12.  Moreover, Plaintiffs claim that Defendants would "strenuously challenge" class certification as well as each element of the causes of action, including deceptive or manipulative act, scienter, and loss causation.  *See* Mot. at 9; Moody Decl. ¶ 12-13.  And even if Plaintiffs were to prevail, their recovery—after class

16

United States District Court
Northern District of California

1    certification, trial, and appeals—could come years in the future.  The Court finds that, given these

2    risks, the settlement amount also weighs in favor of granting preliminary approval.

3                  **iv.   Fairness of Supplemental Agreement**

4            The Court must also review the fairness of the parties' confidential Supplemental

5    Agreement.  *See* S.A. ¶ 12.2.  The existence of a termination option triggered by the number of

6    class members who opt out of the Settlement does not by itself render the Settlement unfair.  *See,*

7    *e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal.

8    Dec. 18, 2018).  At the Court's request, the parties submitted the confidential Supplemental

9    Agreement for *in camera* review.  And having reviewed it, the Court finds that that the

10   termination provision does not impact the fundamental fairness of the Settlement Agreement.

11                 **v.   Obvious Deficiencies**

12           The Court also considers whether the settlement agreement has obvious deficiencies.  The

13   Court finds no obvious deficiencies and therefore finds that this factor weighs in favor of

14   preliminary approval.

15                                    *       *       *

16           Having weighed the relevant factors, the Court preliminarily finds that the Settlement

17   Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court

18   **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when

19   submitting their motion for final approval.

20   **IV.   PROPOSED PLAN OF ALLOCATION**

21           The Court also must preliminarily approve the Plan of Allocation.  Such a distribution plan

22   is governed by the same legal standards that apply to the approval of a settlement: the plan must

23   be fair, reasonable, and adequate.  *See, e.g.*, *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d

24   1152, 1154 (N.D. Cal. 2001).  "A settlement in a securities class action case can be reasonable if it

25   fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also

26   sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses

27   of class members' individual claims and the timing of purchases of the securities at issue."  *Vinh*

28   *Nguyen v. Radient Pharms. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6,

United States District Court
Northern District of California

1    2014) (quotation omitted). "[C]ourts recognize that an allocation formula need only have a

2    reasonable, rational basis, particularly if recommended by experienced and competent counsel."

3    *Id.* at *5.

4         The Plan of Allocation here uses a "recognized loss" value that tailors the recovery of each

5    class member to the timing and sale of Aqua Metals securities relative to periods of alleged

6    artificial inflation and corrective disclosures, as well as the number of shares at issue in each class

7    member's claim.  *See SA*, Ex. A-1 at 14-15.  The Settlement Fund will thus be distributed on a *pro*

8    *rata* basis according to each class member's recognized loss.  The Court therefore finds that the

9    Plan of Allocation treats the class members fairly and preliminarily approves it.

10   **V.    PROPOSED CLASS NOTICE PLAN**

11        For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best

12   notice that is practicable under the circumstances, including individual notice to all members who

13   can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Individual notice must

14   be sent to all class members "whose names and addresses may be ascertained through reasonable

15   effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

16        With respect to the content of the notice itself, the notice must clearly and concisely state

17   in plain, easily understood language:

18        (i)     the nature of the action;
     (ii)    the definition of the class certified;
19        (iii)   the class claims, issues, or defenses;
     (iv)    that a class member may enter an appearance through an attorney if
20               the member so desires;
     (v)     that the court will exclude from the class any member who requests
21               exclusion;
     (vi)    the time and manner for requesting exclusion; and
22        (vii)   the binding effect of a class judgment on members[.]

23   Fed. R. Civ. P. 23(c)(2)(B).

24        As an initial matter, Lead Plaintiff asks the Court to approve the appointment of A.B. Data

25   Ltd. ("A.B. Data") as Claims Administrator.  *See* Mot. at 23; Walter Decl. ¶ 2.  The Court finds

26   that A.B. Data has extensive experience implementing notification and claims administration

27   programs in class actions and approves its appointment as Claims Administrator in this case.  *See*

28   Walter Decl. ¶ 2.

Lead Plaintiff next asks the Court to approve its Class Notice Plan. Under the Notice Plan, A.B. Data will mail class notice to the members of the class that may be identified through reasonable efforts. SA ¶ 8.2; Walter Decl. ¶ 2. To help identify the class members, Aqua Metals will provide A.B. Data with its common stockholder lists (consisting of common stockholder names and addresses during the Settlement Class Period) in electronic form. SA ¶ 8.2. The Court understands that most class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser. *See* Walter Decl. ¶ 4. Accordingly, A.B. Data will use a proprietary database with names, mailing addresses, and email addresses of approximately 4,000 banks, brokers, and other nominees (the "Nominee List"). *See id.* A.B. Data will then mail notice to all persons and entities identified as potential class members by Aqua Metals' stock transfer agent and to all entities on the Nominee List no later than ten (10) business days after the Court issues its Preliminary Approval Order. *See id.* ¶ 7. The notice to the Nominee List will instruct the nominees to provide the names and addresses of their clients who may be Settlement Class Members, and A.B. Data will mail the "Notice Packet" to all potential Settlement Class Members identified by nominees. *See id.* ¶¶ 8-9. Addresses will be checked against the United States Postal Service's National Change of Address database to identify address changes and obtain current mailing addresses where available. *See id.* ¶ 9.

A.B. Data attests that this process is "customary" in securities class actions. *See id.* ¶ 4. Although A.B. Data says "it is usually not possible to meaningfully project the total number of Settlement Class Members prior to implementing the notice plan," it estimates disseminating approximately 25,000 Notice Packets to potential Settlement Class Members. *See id.* ¶¶ 12-13. A.B. Data will also maintain a case-specific website dedicated to this settlement, publish a summary version of the notice once in *Investor's Business Daily*, and send the Depository Trust Company ("DTC") a Notice and Claim Form for the DTC to publish on its Legal Notice System. *Id.* at ¶¶ 5–11. The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

United States District Court
Northern District of California

The Court also finds that the content of the proposed Notice describes the information required by Federal Rule of Civil Procedure 23.  The parties have attached a copy of their proposed class notice, which includes the proposed Notice that will be mailed to the class members, Dkt. No. 165-1, Ex. A-1; the Proof of Claim and Release that will also be mailed to the class members, Dkt. No. 165-1, Ex. A-2; and the Summary Notice that will be published once in *Investor's Business Daily* and through a national newswire, Dkt. No. 165-1, Ex. A-3.  Among other things, the proposed Notice apprises class members of the nature of the Action, the definition of the Settlement Class to be certified, the Class claims and issues, and the claims that will be released.[4]  And it does so in plain, easily understood language.  The Court therefore finds that the content of the proposed Notice provides sufficient information about the case and conforms with due process requirements.  *See Hyundai*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (citation and quotations omitted)).

## VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval

---

[4] Additionally, the Notice: (1) describes the Settlement, Settlement amount and potential recovery both on an aggregate basis and an average per-share basis; (2) explains that the parties disagreed regarding whether any damages were recoverable even if Lead Plaintiff prevailed on its claims and includes a brief description of why the parties are proposing the Settlement; (3) includes a brief description of the maximum amount of fees and expenses that Lead Counsel will seek; (4) describes the Plan of Allocation; (5) advises of the binding effect of a Judgment on Settlement Class Members under Rule 23(c)(3); (6) advises that a Settlement Class Member may enter an appearance through counsel if desired; (7) states that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so); (8) describes how to object to the proposed Settlement and/or requested attorneys' fees and Litigation Expenses and/or the request for an award to Lead Plaintiff for its costs and expenses and describes what these payments amount to on an average per share if approved; (9) describes how to make a Claim; (10) provides the names, addresses and telephone numbers of representatives of the Claims Administrator (including the settlement website) and Lead Counsel who will be available to answer questions from Settlement Class Members; (11) includes instructions on how to access the case docket via PACER or in person at the court; (12) states the date, time and location of the Final Approval Hearing and that the date may change without further notice to the Settlement Class and advises Settlement Class Members to check the settlement website or the Court's PACER site to confirm that the date has not been changed; and (13) includes the deadlines for submitting Claim Forms, opting out of the Settlement and for any objections to the Settlement, the Plan of Allocation or to Lead Counsel's requested attorney's fees and Litigation Expenses or the request for an award to Lead Plaintiff for its costs and expenses. *See* Dkt. No. 165-1, Ex. A-1.

of class action settlement. The parties are **DIRECTED** to stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motions for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 10/5/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge