UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE AQUA METALS, INC.
SECURITIES LITIGATION

Case No. 17-cv-07142-HSG

**ORDER GRANTING MOTION FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES AND COSTS**

Re: Dkt. Nos. 174, 175

Pending before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs, and incentive award.  Dkt. Nos. 174, 175.  The Court held a final fairness hearing on February 24, 2022.  For the reasons detailed below, the Court **GRANTS** both motions.

## I.    BACKGROUND

### A.    Factual Allegations and Procedural Background

Plaintiffs brought this securities class action lawsuit against Defendants Aqua Metals, Inc. ("Aqua Metals") and some of its officers and directors in December 2017.  *See* Dkt. No. 1. Plaintiffs allege that Defendants artificially inflated Aqua Metals's stock price by misleading investors about the viability and profitability of its lead-acid battery recycling technology.  *See* Dkt. No. 119 ("Amended Consolidated Complaint" or "ACC").  Plaintiffs further allege that, when the truth about the technology was revealed, Aqua Metals's stock price plummeted in a series of one-day drops, which caused Plaintiffs to suffer significant damages.  *See id.*

Based on these allegations, Plaintiffs seek to represent themselves and investors who purchased or otherwise acquired common stock of Aqua Metals sold between May 19, 2016 and November 9, 2017 (the "Class Period").  *See id.*  They assert causes of action for violations of

United States District Court
Northern District of California

1  Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a)

2  (the "Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). *See id.*

3       In March 2018, the Court consolidated three related class actions then pending in the

4  Northern District of California into one class action lawsuit entitled *In re Aqua Metals, Inc.*

5  *Securities Litigation*, No. 4:17-cv-07142. Dkt. No. 50. The Court appointed the Plymouth County

6  Group as Lead Plaintiff for the Class and approved Lead Plaintiff's choice of the law firms of

7  Berman Tabacco and Levi & Korsinsky, LLP as Class Counsel. Dkt. No. 57. Lead Plaintiff then

8  filed a Consolidated Complaint for Violations of Securities Laws alleging claims under the

9  Exchange Act and the Securities Act of 1933 ("Securities Act"). Dkt. No. 83.

10       In September 2018, Defendants moved to dismiss the Consolidated Complaint. Dkt. No.

11  93. The Court granted in part and denied in part Defendants' motion to dismiss, denying

12  Defendants' motion to dismiss as to the Section 10(b), Rule 10b-5(a) and (c) Scheme Liability

13  Claim and Section 20(a) Control Person Liability Claim, while granting the motion as to the

14  Section 10(b), Rule 10b-5(b) Misrepresentation Claim, Section 11 Claim, and Section 15 Claim

15  with leave to amend. Dkt. No. 113.

16       In September 2019, Lead Plaintiff filed the Amended Consolidated Complaint, which is

17  the operative complaint in this case. Dkt. No. 119. The ACC asserts only Exchange Act claims

18  against Aqua Metals and the Individual Defendants. *Id.* Defendants moved to dismiss the ACC's

19  Section 10(b), Rule 10b-5(b) Misrepresentation Claim and the Section 20(a) Control Person

20  Liability Claim as it relates to Count One of the ACC. *See* Dkt. Nos. 128-29. In November 2020,

21  the Court granted the motion and dismissed the Section 10(b), Rule10b–5(a) and (c) scheme

22  liability claim and Section 20(a) control person liability claim as it relates to Count One of the

23  ACC. *See* Dkt. No. 141.

24       In July 2021, following formal discovery and with the assistance of a mediator, the parties

25  entered into a settlement agreement. Dkt. No. 166-1 ("SA"). Shortly afterwards, Plaintiffs filed a

26  motion for preliminary approval of a proposed settlement agreement. Dkt. No. 165. The Court

27  granted preliminary approval on October 5, 2021. Dkt. No. 170.

28

### B.    Settlement Agreement

The key terms of the Settlement Agreement are as follows:

<u>Class Definition</u>: The Settlement Class is defined as: "All persons and entities who purchased or otherwise acquired common stock or options to purchase common stock of Aqua Metals between May 19, 2016 and November 9, 2017, inclusive, and were damaged as a result." SA ¶ 1.35.  The following persons are excluded from the Settlement Class:

> (a) Defendants;
> (b) members of the immediate family of each of the Defendants;
> (c) Defendants' subsidiaries and affiliates;
> (d) any person who is an officer, director or controlling person of Aqua;
> (e) any entity in which any Defendant has a controlling interest;
> (f) Defendants' directors' and officers' liability insurance carriers, and any of their affiliates or subsidiaries; and
> (g) the legal representatives, heirs, successors or assigns of any such excluded party.

*Id.* All persons who submit valid and timely requests for exclusions from the Class will also be excluded. *Id.*

<u>Settlement Benefits</u>: Aqua Metals will make a $7 million non-reversionary payment into a Settlement Fund. *Id.* ¶ 4.1.  The $7 million payment will consist of $6.5 million in cash to be funded by Aqua Metals's D&O insurance carriers and $500,000 in either Aqua Metals common stock or cash, at Aqua Metals's sole option. *Id.*  After deduction of taxes, administration costs, litigation expenses, attorneys' fees, and any incentive award to Lead Plaintiff for its costs and expenses, the rest (the "Net Settlement Fund") will be distributed to the Settlement Class Members under the Plan of Allocation. *Id.* ¶ 5.2.

According to the Plan of Allocation, a third-party settlement administrator will determine each authorized claimant's share of the Net Settlement Fund based upon the recognized loss formula ("Recognized Loss"). *See id.,* Ex. A-1 at 14.  A Recognized Loss will be calculated for each share of Aqua Metals common stock and each exchange traded call option on Aqua Metals common stock purchased or otherwise acquired during the Settlement Period. *See id.,* Ex. A-1 at 14-15.  Each authorized claimant's Recognized Loss calculation depends on several factors, including when they purchased or otherwise acquired Aqua Metals securities during the

Settlement Class Period and in what amounts, and whether such securities were sold and, if sold, when and for what amounts.  *See id.*, Ex. A-1 at 15-19.  Depending on the number of eligible shares purchased by investors who elect to participate in the settlement and when those shares were purchased and sold, the average distribution is estimated to be $0.49 per damaged share purchased in the Settlement Class Period, before deduction of Court-approved fees and expenses. *See id.,* Ex. A-1 at 1.

*Cy Pres* Distribution: If any portion of the Net Settlement Fund remains following distribution under the Plan of Allocation and is of an amount that, in the discretion of Class Counsel, is not cost effective or efficient to redistribute to the Settlement Class, then those remaining funds, after payment of any further notice and administration costs and taxes, will be donated to Loyola University School of Law's Institute for Investor Protection.  SA ¶ 4.4; Dkt. No. 176, Declaration of Kristin J. Moody in Support of Motion for Settlement ("Moody Decl.") ¶ 89.

Release: Under the Settlement Agreement, all class members will release their "Released Claims" against the "Defendant Releasees."  SA ¶ 3.2.  "Plaintiffs' Released Claims" are defined as follows:

> [A]ny and all claims, demands, losses, rights, and causes of action, of any nature whatsoever, whether known or unknown, that have been or could have been asserted in this Action or could in the future be asserted in any forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law, by Lead Plaintiff, any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, whether brought directly or indirectly against any of the Defendants, which (a) arise out of, are based upon, or relate to in any way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth. alleged or referred to, in this Action, or which could have been alleged in this action, and (b) arise out of, are based upon, or relate to in any way to the purchase, acquisition, holding, sale, or disposition of any Aqua securities during the Class Period. The Settlement shall include a waiver of Lead Plaintiff's and Settlement Class Members' rights under California Civil Code §1542 or similar laws. Notwithstanding the foregoing, "Plaintiffs' Released Claims" do not include: (i) claims relating to the enforcement of the Settlement; or (ii) claims asserted on behalf of Aqua in any derivative action based on similar allegations, including but not limited to claims in *In re Aqua, Inc. Stockholder Derivative Litigation*, Master File No. 1:18-cv-00201 (D.

Del. 2018).

*Id.* ¶ 1.29. The "Defendant Releasees," in turn, are Defendants and all their present and former parents, subsidiaries, divisions, affiliates, present and former employees, officers and directors, present and former attorneys, accountants, insurers, and agents, and predecessors, heirs, successors, and assigns. *Id.* ¶ 1.10.

Class Notice: The parties agreed that A.B. Data, a third-party settlement administrator (or "Claims Administrator") would mail notice of the class action settlement and a claim form to all class members who could be identified with reasonable effort. *Id.* ¶ 8.2.

Settlement Class Members had until January 3, 2022, to opt out of the Settlement Class by submitting a valid and timely request to the Claims Administrator in the manner described in the Notice. SA ¶¶ 9.1-9.2. Any member of the Settlement Class who did not submit a timely written request for exclusion will be bound by the terms of the Settlement Agreement or any final judgment. *Id.* ¶ 9.2. Conversely, all persons who did submit valid and timely requests for exclusion have no rights under the Settlement Agreement, will not share in the distribution of the Net Settlement Fund, and will not be bound by the Settlement Agreement or any final judgment. *Id.*

Incentive Award: The Settlement Agreement allows Class Counsel to seek an award to pay the costs and expenses of Lead Plaintiff in connection with the prosecution of this case. *Id.* ¶ 7.1. Class Counsel's declaration states that Lead Plaintiff intends to seek an award not to exceed $5,000 in total for its costs and expenses related to this litigation. *See* Moody Decl. ¶ 21.

Attorneys' Fees and Costs: The Settlement Agreement allows Class Counsel to seek an attorneys' fees award and for reimbursement of litigation expenses. SA ¶ 7.1. Class Counsel is moving for attorneys' fees in the amount of $1,750,000. *See* Moody Decl. ¶ 19. They are also requesting reimbursement of litigation expenses in the amount of $95,634.04. *Id.* ¶ 20.

**C.    Supplemental Agreement**

The Settlement Agreement also references a confidential "Supplemental Agreement" that was not filed with the Court. *See* S.A. ¶ 12.2. The Supplemental Agreement details the conditions under which Defendants may terminate the settlement if the requests for exclusion from the

settlement class exceed a certain level.  *Id.*  At the Court's request, the parties submitted the confidential Supplemental Agreement for *in camera* review.  The Court reviewed the Supplemental Agreement and found that it does not impact the fundamental fairness of the Settlement Agreement.  *See* Dkt. No. 170 at 6.

## II.   ANALYSIS

### A.   Final Settlement Approval

#### i.   Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on October 5, 2021, this order incorporates by reference the Court's prior analysis.  *See* Dkt. No. 170 at 8-11.

#### ii.   The Settlement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'"  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted).  Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A

1    more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not

2    secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a

3    duty to represent.'" *Id.* (citations and quotations omitted).

4          To assess whether a proposed settlement comports with Rule 23(e), the Court "may

5    consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk,

6    expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

7    action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

8    completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the

9    presence of a governmental participant; and (8) the reaction of the class members to the proposed

10   settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*,

11   150 F.3d at 1026.  The relative degree of importance of any particular factor is case specific.

12   *Officers for Justice*, 688 F.2d at 625.

13         In addition, adequate notice is "critical" to court approval of a class settlement under Rule

14   23(e).  *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that the proposed

15   settlement is fair, adequate, and reasonable, and that class members received adequate notice.

16                        **a.  Adequacy of Notice**

17         Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable

18   manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

19   Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including

20   individual notice to all members who can be identified through reasonable effort."  The notice

21   must "clearly and concisely state in plain, easily understood language" the nature of the action, the

22   class definition, and the class members' right to exclude themselves from the class.  Fed. R. Civ.

23   P. 23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class

24   members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*,

25   18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable"

26   notice, not "actually received" notice).

27         The Court finds that the notice plan previously approved by the Court was well-

28   implemented and complies with Rule 23(c)(2)(B).  *See* Dkt. No. 170 at 18–20.  As of February 23,

United States District Court
Northern District of California

2022, A.B. Data has mailed a total of 21,670 Notice Packets to potential Settlement Class Members.  *See* Dkt. No. 181, Second Supplemental Declaration of Adam D. Walter ("Second Suppl. Walter Decl.") ¶ 8.  126 of those packets were undeliverable and remailed.  *See* Dkt. No. 177-2, Supplemental Declaration of Adam D. Walter ("Suppl. Walter Decl.") ¶ 8.  A.B. Data also posted the requisite documents to the settlement website and published the Summary Notice in *Investor's Business Daily* and *PR Newswire*.  *Id.* ¶¶ 5-9.  A.B. Data maintained a toll-free telephone number for the Settlement and has received and responded to 128 telephone calls as of February 23, 2022.  Second Suppl. Walter Decl. ¶ 7.  And, also as of February 23, 2022, A.B. Data has received no objections to the settlement and one request for exclusion from the Settlement Class.  *Id.* ¶¶ 10-11.  In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b.  Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1.  Strength of Plaintiffs' Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).  Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement.  *Rodriguez*, 563 F.3d at 966.  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the risk Plaintiffs would face by continuing to litigate the case. For example, Class Counsel notes that Defendants dispute the extent to which Aqua Metals's

stock price decline was attributable to the alleged fraud, as opposed to other company-specific bad news.  *See* Moody Decl. ¶¶ 58, 60.  Class Counsel also explains that Defendants' position as to when the class period should begin could "severely limit" the amount of damages Plaintiffs would be able to recover, if the Court were to agree.  *See id.* ¶ 13.  Moreover, Plaintiffs claim that Defendants would "strenuously" dispute whether class certification is appropriate and also contest each element of the causes of action, including deceptive or manipulative act, scienter, and loss causation.  *See id.*  And even if Plaintiffs were to prevail, their recovery—after class certification, trial, and appeals—could come years in the future.  *See id.* ¶ 62.  The Court finds that these factors weigh in favor of approving the settlement.  *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2.  Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed.  Because the parties provisionally certified the class for the purposes of settlement, Plaintiffs avoided the risks inherent in certifying and then maintaining class status throughout the litigation.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification orders are "inherently tentative"); *Rodriguez*, 563 F.3d at 966 ("A district court may decertify a class at any time."); *Omnivision Techs.*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial[.]").  As Plaintiffs note, those risks include the possibility that the class period would be shortened, that Defendants would appeal a class certification order, or that the law could trend unfavorably.  *See* Moody Decl. ¶ 63.  Considering those risks, the Court finds that this factor weighs slightly in favor of approval.

### 3.  Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *8 (N.D. Cal. Nov. 21, 2018).

Here, the total value of the settlement offer is $7 million, consisting of $6.5 million in cash

9

United States District Court
Northern District of California

to be funded by Aqua Metals's D&O insurance carriers and $500,000 in either Aqua Metals common stock or cash, at Aqua Metals's sole option.  SA ¶ 4.1.  Class Counsel contends that this settlement offer constitutes 7.3% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants.  *See* Moody Decl. ¶ 13.  The Court agrees that this recovery is in line with comparable class action settlements.  *See, e.g.*, *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-0483, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement fund amount of 4.63 to 7.65% of the class's total estimated damages); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 2077847, at *2 n.2. (N.D. Cal. May 10, 2019) (noting that "the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions").  Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

### 4.  Extent of Discovery Completed and Stage of Proceedings

The Court also finds that Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  The parties reached settlement after over three years of litigation and hard-fought negotiations which consisted of careful analysis of complex factual and legal issues and an extensive amount of time and effort.  *See* Moody Decl. ¶ 8.  The Court is persuaded that Class Counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits.  This factor weighs in favor of approval.

### 5.  The Experience and Views of Counsel

The Court next considers the experience and views of counsel.  "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (quotations omitted).  Class Counsel each have decades of experience litigating securities class actions.  *See* Moody Decl. ¶ 106.  And Class Counsel recommend this Settlement as fair, adequate, and reasonable.  *Id.* ¶ 22.

The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements[.]").  This factor's impact is therefore modest, but favors approval.

### 6.  Reaction of Class Members

Finally, the reaction of the Class Members also supports final approval.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As of February 23, 2022,  A.B. has received only one timely request for exclusion from the settlement class.  Second Suppl. Walter Decl. ¶ 9.  No objections to the settlement have been received. *Id.* ¶ 10.  The Court finds that the minimal number of objections and opt-outs in comparison to the size of the class indicates support among the Class Members and weighs in favor of approval of the settlement. *See, e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

*     *     *

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice.[1]  Accordingly, Plaintiffs' motion for final approval of the class action settlement

---

[1] The Court's Order preliminarily approving the Settlement Agreement scrutinized it for "evidence of collusion or other conflicts of interest" and found none. *See* Dkt. No. 170 at 13-15; *see also Roes*, 944 F.3d at 1049.  Because no facts that would affect the Court's analysis have changed since then, this Order incorporates its prior analysis by reference.

is **GRANTED**.

### B.    Attorneys' Fees, Costs and Expenses, and Incentive Award

Class Counsel also asks the Court to approve: (1) an award of attorneys' fees in the amount of $1,750,000 to Class Counsel; (2) reimbursement of $95,634.04 in litigation expenses advanced by Class Counsel; (3) payment of the Class Representative Incentive Awards in the amount of $5,000 to Lead Plaintiff.  *See* Dkt. No. 175 ("Fees Mot.").

#### i.    Attorneys' Fees

##### a.   Legal Standard

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class.  *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).  The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  The district court has discretion over the amount of attorney fees to award.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

In a common fund case, the Court may choose either (1) the lodestar method or (2) the percentage-of-the-fund to calculate reasonable attorneys' fees.  *Id.* at 1047.  Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards.  *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate

documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citations omitted).  "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Camacho v. Bridgeport Fin.*, Inc., 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted).  Generally, "the relevant community is the forum in which the district court sits."  *Id.* (citations omitted).  And typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases."  *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although the choice between lodestar and percentage calculation depends on the circumstances, either method may have its place in determining reasonable compensation for creating a common fund.  *Six Mexican Workers*, 904 F.2d at 1311.

### b.  Analysis

Class Counsel asks the Court to approve an award of attorneys' fees in the amount of $1,750,000.  *See* Fees Mot. at 9.  The Court finds that this amount is reasonable.

First, in seeking 25% of the amount Defendants will pay to the settlement fund, Class Counsel requests the "benchmark" reasonable award in this Circuit.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  Second, and most significantly, Class Counsel achieved significant results for the class members by obtaining a Net Settlement Amount of $7 million.  *See* Fees Mot. at 13.  Third, no Class Member objected to the Settlement and only one opted out, which suggests support for the settlement's outcome.  *See* Suppl. Walter Decl. ¶ 9.  And finally, Class Counsel assumed substantial risk in litigating this lengthy case on a contingency fee

United States District Court
Northern District of California

basis and incurring costs without the guarantee of payment for its efforts. *See* Fees Mot. at 19.

Using the lodestar method to cross-check, the Court notes that Class Counsel's hourly rates are $765-$1,050 for partners and $425-$650 for associates. *Id.* at 24. The Court finds that the billing rates used by Class Counsel to calculate the lodestar are in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable). Since Class Counsel spent 5,966.75 hours on this litigation through preliminary approval, the aggregate lodestar is approximately $4,354,590.75. Fees Mot. at 19; Moody Decl. ¶ 101.

Class Counsel's fee request of $1,750,000, then, amounts to a negative multiplier of 0.4 of their anticipated lodestar. This is a reasonable request. *See, e.g.*, *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) ("[A] multiplier less than 1.0 is below the range typically awarded by courts[.]"). In recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed, the Court **GRANTS** attorneys' fees of $1,750,000.

### ii. Cost and Expenses

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel is accordingly entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.*

The Court finds that Class Counsel's request for reimbursement of $95,634.04 in litigation costs is reasonable. *See* Fees Mot. at 10. The incurred costs include damages consultant fees, mediation fees, filing fees, process of service fees, electronic research, postage and travel. *See* Moody Decl. ¶¶ 124-132. These reflect the type of expenses routinely charged to paying clients. *See, e.g.*, *Torres v. Pick-A-Part Auto Wrecking*, No. 116-CV-01915, 2018 WL 3570238, at *9

United States District Court
Northern District of California

(E.D. Cal. July 23, 2018) (finding that ordinary out-of-pocket expenses include "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees"); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (same).  And the amount requested is also within range of approval. *See, e.g.*, *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (reimbursing $823,904.04 for costs including filing fees, copying, postage, document storage, depositions, travel, experts, transcripts, computer research, the cost of the mediator, and common-fund contributions).  The Court finds that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $95,634.04.

### iii.    Class Representative Service Award

Class Counsel seeks an incentive award of $5,000 for Plaintiff Plymouth County Group, which is the court-appointed Lead Plaintiff in this class action.  *See* Fees Mot. at 10.  Class representatives are eligible for "reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").  These payments are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.  Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives[.]" *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted).  This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*

The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation[.]" *Id.* at 977.  In the Ninth Circuit, courts often approve a $5,000 service award. *See Noroma v. Home Point Fin. Corp.*, No. 17-CV-07205-HSG, 2019 WL 1589980, at *8

1   (N.D. Cal. Apr. 12, 2019); *see also Harris v. Vector Marketing Corp.*, 2012 WL 381202, at \*7

2   (N.D. Cal. 2012) ("Several courts in this District have indicated that incentive payments of

3   $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.").

4          The Court finds that the requested service awards are reasonable to compensate Lead

5   Plaintiff for its efforts for the following reasons.  First, Lead Plaintiff has taken actions and spent

6   time to protect the interests of the class.  As set forth in the Declarations of Plymouth County

7   Retirement Association and Declaration of Denis Taillefer and 1103371 Ontario Ltd.

8   accompanying this motion, Lead Plaintiff estimates that it spent over 120 hours in work directly

9   related to the representation of the Class.  *See* Fees Mot. at 20; Moody Decl., Exs. 2, 3.  This work

10  included assisting in investigating and substantiating the alleged claims, preparing court filings

11  and editing litigation documents, and attending mediation and settlement negotiations.  *See* Fees

12  Mot. at 20.  Second, as previously explained, their efforts led to favorable results for the entire

13  class.  After reviewing Lead Plaintiff's declaration, and considering the circumstances of this

14  lengthy case, the Court finds that the requested service award is reasonable to compensate Lead

15  Plaintiff for its efforts.

16  **III.    CONCLUSION**

17          Accordingly, the Court **GRANTS** the motion for final approval of class action settlement

18  and **GRANTS** the motion for attorneys' fees, costs, and incentive awards.  The Court approves the

19  settlement amount of $7,000,000.  The Court also approves (1) Class Counsel's request for an

20  award of attorneys' fees in the amount of $1,750,000; (2) Class Counsel's request for payment of

21  current actual costs incurred in the amount of $ $95,634.04; (3) the Class Representative Incentive

22  Awards in the amount of $5,000 for Lead Plaintiff.

23          The parties and settlement administrator are directed to implement this Final Order and the

24  settlement agreement in accordance with the terms of the settlement agreement.  The parties are

25  further directed to file a short stipulated final judgment of two pages or less within 14 days from

26  the date of this order.  The judgment need not, and should not, repeat the analysis in this Order.

27          Within 21 days after the distribution of the settlement funds, the parties must file a Post-

28  Distribution Accounting, which provides the following information:

United States District Court
Northern District of California

16

The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases. The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated: 3/2/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

17